# United States Court of Appeals
## For the First Circuit

---

No. 04-2172

UNITED STATES OF AMERICA,

Appellee,

v.

TIMOTHY P. WORK,

Defendant, Appellant.

---

APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MAINE

[Hon. D. Brock Hornby, U.S. District Judge]

---

Before

Selya, Circuit Judge,
Coffin, Senior Circuit Judge,
and Howard, Circuit Judge.

---

Mary A. Davis, with whom Tisdale & Davis, P.A. was on brief, for appellant.
Margaret D. McGaughey, Assistant United States Attorney (Appellate Chief), with whom Paula D. Silsby, United States Attorney, was on brief, for appellee.

---

June 3, 2005

---

**SELYA**, **Circuit Judge**.   In this appeal, defendant-appellant Timothy P. Work argues that the Sixth Amendment, as interpreted in Blakely v. Washington, 124 S. Ct. 2531 (2004), applies to the revocation of supervised release and the consequent imposition of additional prison time.  He posits that when such a revocation leads to additional imprisonment above and beyond the top of the original guideline sentencing range, the facts underlying the revocation must be proven to a jury beyond a reasonable doubt.  We conclude that the appellant's argument is doubly flawed:  it is premised not only on a misunderstanding of supervised release but also on an attempted importation of Sixth Amendment jury trial rights into an area in which they do not belong.  Consequently, we affirm the judgment below.

## I.  BACKGROUND

On April 10, 2001, the appellant pleaded guilty to one count of aiding and abetting the uttering of counterfeit obligations.  See 18 U.S.C. §§ 2, 472.  On August 16, 2001, the district court, using the then-current edition of the federal sentencing guidelines, imposed a 38-month incarcerative sentence, to be followed by three years of supervised release.  The court made the latter term subject to all the standard supervised release conditions, including a prohibition against the commission of further crimes.  It added special conditions prohibiting the appellant from using or possessing alcohol or frequenting

establishments that had the primary purpose of dispensing alcoholic beverages.

The appellant served his prison sentence without incident. His supervised release commenced on March 9, 2004. Over a span of three weeks in May of that year, the appellant committed a string of relatively minor supervised release infractions. See USSG §7B1.1(a)(3) (describing Grade C violations). These included an arrest for stealing beer from a convenience store, possessing alcohol, failing to report the arrest to a probation supervisor, failing to make a probation office visit after being so instructed, failing to appear for drug testing, and failing to notify the probation office of a change in residence. As a result, the probation department petitioned the district court for revocation of the appellant's supervised release.

Before any action was taken on the petition, the appellant hit the trifecta: on June 13, 2004, police arrested him, massively intoxicated, at a bar in Myrtle Beach, South Carolina, after he allegedly had attempted to pass counterfeit $20 bills. This incident prompted the probation department to amend the pending petition and include a charge that the appellant had committed a Grade B violation of the conditions of his supervised release. Id. §7B1.1(a)(2).

The district court convened a revocation hearing on August 16, 2004. The petitioner contested the shoplifting and

passing of counterfeit currency charges, but admitted that he had no factual defense to the other, less serious supervised release violations. As to those, however, he adverted to Blakely and offered the following syllogism: (i) Blakely held that the maximum sentence that a judge may impose is that which the facts reflected in the jury verdict or guilty plea actually support; (ii) the facts admitted in his guilty plea to the original crime of conviction (for aiding and abetting the uttering of counterfeit currency) dictated a guideline sentencing range of 33 to 41 months; (iii) his initial prison sentence was 38 months; so therefore (iv) the district court could not convert more than three months of his supervised release term into additional prison time without a further trial, as doing so would extend his term of immurement past the maximum of 41 months authorized by the sentencing guidelines. In order for the court to impose more than three months' additional imprisonment, his thesis ran, a jury would have to determine beyond a reasonable doubt that he had committed the alleged supervised release violations.

The district court, ruling from the bench, rejected the appellant's syllogism. The court held that Blakely does not apply to the revocation of supervised release and that, in any event, no right to jury trial obtains in a supervised release revocation hearing. The court then took evidence on the two most serious charges (shoplifting and the passing of counterfeit currency) and

-4-

found that the government had not carried its burden of proof. Finally, the court found that the Grade C infractions had been established by preponderant evidence.

The government argued for a two-year prison sentence — the maximum permitted by the applicable statute. See 18 U.S.C. § 3583(e)(3). The appellant reiterated his view that the sentence could not lawfully exceed three months. The court rejected this view and sentenced the appellant to serve an incremental 14-month term. That coincided with the maximum recommended by the Sentencing Commission for a Grade C supervised release violator with the appellant's criminal history. See USSG §7B1.4(a). This timely appeal followed.

## II. ANALYSIS

In this venue, the appellant reiterates that 11 of the 14 months of his incremental prison term are unconstitutional because a judge, not a jury, determined that he had committed the infractions undergirding the sentence. Analytically, we divide this argument into two parts. First, we consider whether the appellant's additional imprisonment constituted a violation of the Sixth Amendment as interpreted by the Blakely Court. Next, we consider whether the appellant had a right to a jury trial on the question of whether he had violated the conditions appertaining to his supervised release.

An intelligent discussion of Blakely requires an understanding of a predecessor case: Apprendi v. New Jersey, 530 U.S. 466 (2000). In that decision, the Supreme Court invalidated a New Jersey law that permitted a court to impose additional years of imprisonment above and beyond the defined statutory maximum punishment for the crime of conviction if it found by a preponderance of the evidence that the offense was a hate crime. 530 U.S. at 468-69. In the process, the Court announced the principle that "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." Id. at 490.

Blakely followed Apprendi by some four years. It involved a challenge to a state determinate sentencing scheme. For each offense, the state law prescribed a "standard range" of months that a court had to impose following a conviction. Blakely, 124 S. Ct. at 2535. The law permitted a court to impose a sentence greater than the top of the prescribed range if it found "substantial and compelling reasons justifying an additional sentence" so long as the justification relied on "factors other than those which [were] used in computing the standard range sentence for the offense." Id. (internal quotation marks omitted). Blakely had pleaded guilty to kidnaping, and the state court had imposed a sentence thirty-seven months greater than the top of the

applicable range based on its finding that Blakely had acted with "deliberate cruelty." Id.

The Supreme Court adjudged this sentence-enhancement procedure to be in violation of the Sixth Amendment. Id. at 2537-38. The Court repeated Apprendi's holding that, apart from the fact of a prior conviction, "any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury." Id. at 2536 (citing Apprendi, 530 U.S. at 490). The Court interpreted the phrase "statutory maximum" to mean the "maximum sentence [that] a judge may impose solely on the basis of the facts reflected in the jury verdict or admitted by the defendant." Id. at 2537. Because Blakely's guilty plea did not authorize the additional thirty-seven month penalty and because that part of the sentence was based on a fact that was neither admitted by the defendant nor found by the jury, the enhanced sentence violated his Sixth Amendment rights. Id. at 2538.

Blakely's reasoning cast a pall over the constitutionality of the federal sentencing guidelines. See, e.g., id. at 2548-50 (O'Connor, J., dissenting) (predicting the imminent demise of the guidelines). The Supreme Court confirmed this gloomy forecast in United States v. Booker, holding squarely that Blakely applied to the federal sentencing guidelines. 125 S. Ct. 738, 755 (2005). The Court repaired the constitutional defect by invalidating those provisions of the Sentencing Reform Act that

made the federal sentencing guidelines mandatory. Id. at 764-65. We have since held that the error described in Booker "is that the defendant's Guidelines sentence was imposed under a mandatory system." United States v. Antonakopoulos, 399 F.3d 68, 75 (1st Cir. 2005).

Despite this turn of events, the appellant, in his post-Booker briefing, continues to rely upon the "fact" that he in effect was sentenced to 52 months' imprisonment (an initial 38-month term for the offense of conviction plus an incremental 14-month term for violating his supervised release) even though the sentencing guidelines called for a maximum of 41 months' imprisonment for the offense of conviction. This argument is more cry than wool.

To begin, the appellant has made it pellucid that he is not attacking the constitutionality of the incremental 14-month prison term because it was mandatory under the guidelines. See Appellant's Reply Br. at 2. Given our holding that the Booker error is sentencing within a mandatory system — whether or not a Blakely violation occurred on any particular set of facts — this concession may mortally wound the appellant's claims. See Antonakopoulos, 399 F.3d at 75 ("The error is not that a judge (by a preponderance of the evidence) determined facts under the Guidelines which increased a sentence beyond that authorized by the

-8-

jury verdict or an admission by the defendant; the error is only that the judge did so in a mandatory Guidelines system.").

In all events, the record here does not reveal a Sixth Amendment transgression of the kind described in Blakely. The appellant's position is that the top of the guideline sentencing range represents the maximum term of imprisonment that a defendant can be compelled to serve for a particular crime, regardless of whether that imprisonment stems from the initial sentence or from the revocation of an ancillary order for supervised release. We rejected the essence of this argument over a decade ago. See United States v. Mandarelli, 982 F.2d 11, 11 (1st Cir. 1992) (Breyer, C.J.) (dismissing the contention that "the law forbids [a] court to sentence [a defendant] for his supervised release violation to more than . . . the maximum he could have received under the Guidelines for his original . . . offense") (internal punctuation omitted). We reject it again today, for the same elementary reason: the argument relies on an improper elision of two statutorily distinct modes of punishment. Applying Blakely to each authorized aspect of the sentence reveals that the court below committed no error at all. We explain briefly.

The appellant appears to confuse the lay view of a "criminal sentence" — a predetermined number of months or years in prison that corresponds to a conviction for a specific offense — with the larger concept of the "sentence" as provided in the

federal criminal statutes. Under the latter rubric, a defendant's felony conviction typically authorizes the sentencing court to impose several different forms of punishment. These normally include either some period of incarceration, or a fine, or both, and a special monetary assessment under 18 U.S.C. § 3013. In addition, the conviction authorizes the court to "include as a part of the sentence a requirement that the defendant be placed on a term of supervised release after imprisonment." Id. § 3583(a).

The reference to supervised release as being "part of the sentence" does not mean that a federal criminal sentence must be aggregated for all purposes. It merely means that the sentence contains distinct aspects. These include the incarcerative term imposed for the crime of conviction (derived from the statute delineating the penalties applicable to that particular offense) and the supervised release term applicable thereto (derived from section 3583). The supervised release period is an independent element of the sentence. It is not carved out of the maximum permissible time allotted for incarceration under some other criminal statute. See United States v. West, 898 F.2d 1493, 1504 (11th Cir. 1990) (describing supervised release as "a separate part of the defendant's sentence" and noting that its length is not dependent "on the almost sheer accident of the amount of time that happens to remain of the term of imprisonment when the defendant is released" (quoting S. Rep. No. 98-225, 123-24, reprinted in 1984

-10-

U.S.C.C.A.N. 3182, 3306-07)); 3 Charles Alan Wright et al., Federal Practice and Procedure § 536.1 (2004) (explaining that "the term of supervised release . . . does not replace part of the term of incarceration, but is imposed in addition to the incarceration term").

Given this background, it is unsurprising that courts routinely have held that the combined sentence of years of imprisonment plus years of supervised release may exceed the statutory maximum number of years of imprisonment authorized by the substantive statute applicable to the crime of conviction. See, e.g., United States v. Wirth, 250 F.3d 165, 170 n.3 (2d Cir. 2001); United States v. Pierce, 75 F.3d 173, 178 (4th Cir. 1996); United States v. Robinson, 62 F.3d 1282, 1285-86 (10th Cir. 1995); United States v. Watkins, 14 F.3d 414, 415 (8th Cir. 1994); United States v. Jamison, 934 F.2d 371, 375 (D.C. Cir. 1991); United States v. Montenegro-Rojo, 908 F.2d 425, 431-32 (9th Cir. 1990); West, 898 F.2d at 1504; United States v. Butler, 895 F.2d 1016, 1018 (5th Cir. 1989). We think it follows ineluctably that any term of incarceration authorized under the supervised release statute is not limited by reference to the period of incarceration authorized by the substantive criminal statute applicable to the crime of conviction. Several of our sister circuits have passed upon this question and their decisions are in accord with this analysis. See, e.g., United States v. Colt, 126 F.3d 981, 982-83 (7th Cir.

-11-

1997) (affirming nine-month term of imprisonment for supervised release violation, where defendant already had served seven months on a charge punishable by one year of imprisonment); United States v. Wright, 2 F.3d 175, 180 (6th Cir. 1993) (stating that "it is possible for a defendant to be sentenced and serve the statutory maximum term of imprisonment for the offense and after his release from prison to be subject to further imprisonment if he violates the terms of his supervised release . . . even if when combined with [the] defendant's original sentence it exceed[s] the statutory maximum for the underlying offense"); United States v. Purvis, 940 F.2d 1276, 1279 (9th Cir. 1991) (explaining that "§ 3583 authorizes the revocation of supervised release even where the resulting incarceration, when combined with the period of time the defendant has already served for his substantive offense, will exceed the maximum incarceration permissible under the substantive statute").

A fortiori, the permissible term of incarceration authorized for a supervised release violation is not circumscribed by the substantive sentence called for under the federal sentencing guidelines. See Mandarelli, 982 F.2d at 11; see also 3 Charles Alan Wright et al., supra § 542 ("The Sentencing Guidelines do not limit the sentence that can be imposed on a defendant who is found to have violated the conditions of his supervised release, and the sentence for the violation can exceed the sentence allowable under the Guidelines at the time of initial sentencing."). Rather, the

term of incarceration permitted in consequence of a supervised release violation is cabined by section 3583 itself. See 18 U.S.C. § 3583(e)(3) (setting forth limits on incarceration for supervised release violations).

Although the precise question posed in this case is one of first impression, these authorities point unerringly to the answer. Following their lead, we conclude that when determining whether a sentence exceeds the maximum permissible under the Constitution, each aspect of the sentence must be analyzed separately. See, e.g., United States v. Barnes, 251 F.3d 251, 260-61 (1st Cir. 2001) (following this praxis; finding no Apprendi sentencing error with regard to imposition of incarcerative term, but finding such a violation with regard to supervised release term). As we explain below, neither aspect of the appellant's sentence involved any constitutional affront. Hence, there was no Blakely violation.

At the time of the underlying substantive offense, the statute of conviction carried a 15-year maximum term of imprisonment. See 18 U.S.C. § 472 (2000). The sentencing court, acting in the pre-Booker era, found that the guidelines mandated a 33-41 month incarcerative term. The court arrived at this sentencing range using only (i) facts that were admitted by the appellant in his guilty plea, (ii) the appellant's criminal

history,[1] and a <u>downward</u> adjustment for acceptance of responsibility. <u>See</u> USSG §§2B5.1(b)(2)(A), 2B5.1(b)(3), 3E1.1, 4A1.1, 5A. The appellant does not dispute the accuracy of the determined range, nor does he contend that he was initially sentenced outside the range. Thus, there was no <u>Blakely</u> error at the time the original sentence was imposed.[2]

The conviction also authorized the imposition of a term of supervised release. The applicable statute classified the appellant's original crime as a Class C felony, <u>id.</u> § 3559(a)(3), so that the allowable supervised release term was "not more than three years," <u>id.</u> § 3583(b)(2). Pre-<u>Booker</u>, the sentencing guidelines required the court to impose a supervised release term of two to three years. <u>See</u> USSG §5D1.2(a)(2). In this case, the court pronounced a three-year supervised release term. Since both

---

[1]The criminal history score is composed from the record of a defendant's past convictions and thus consists of facts that need not be proven to a jury for <u>Blakely</u> purposes. <u>See</u> <u>Blakely</u>, 124 S. Ct. at 2536. The rationale of <u>Apprendi</u> and therefore of <u>Blakely</u> simply does not affect sentence-enhancement provisions premised upon a defendant's prior criminal convictions. <u>United States</u> v. <u>Stearns</u>, 387 F.3d 104, 107 (1st Cir. 2004), <u>cert.</u> <u>denied</u>, 125 S. Ct. 1614 (2005); <u>United States</u> v. <u>Moore</u>, 286 F.3d 47, 51 (1st Cir. 2002); <u>see</u> <u>generally</u> <u>Almendarez-Torres</u> v. <u>United States</u>, 523 U.S. 224, 243-44 (1998) (explaining that prior offenses need not be alleged in an indictment nor put before a jury). In the roiled wake of <u>Booker</u>, it remains the law that previous criminal convictions are not "facts" that must be found by a jury and proved beyond a reasonable doubt. <u>See</u> <u>United States</u> v. <u>Lewis</u>, 406 F.3d 11, 21 n.11 (1st Cir. 2005).

[2]To be sure, there was a <u>Booker</u> error, as the district court treated the sentencing guidelines as mandatory. Here, however, the appellant has affirmatively waived any <u>Booker</u> challenge.

the supervised release statute and the supervised release guidelines authorized the court to impose a supervised release term of that duration based solely on the facts admitted in the guilty plea, there was no Blakely violation with respect to this aspect of the sentence.

The appellant, ably represented, attempts to blunt the force of this reasoning by shifting the focus to the revocation proceeding. He remarks that the court alone found the facts confirming the supervised release violations and notes that, absent those facts, the court would not have been authorized to revoke supervised release. This, he says, was raw judicial factfinding in direct contravention of the interpretive gloss that the Blakely Court impressed on the Sixth Amendment.

The difficulty with the appellant's argument is that this type of judicial factfinding does not pose a Sixth Amendment problem. The law is clear that once the original sentence has been imposed in a criminal case, further proceedings with respect to that sentence are not subject to Sixth Amendment protections. See Morrissey v. Brewer, 408 U.S. 471, 480 (1972) (holding that the "revocation of parole is not part of a criminal prosecution and thus the full panoply of rights due a defendant in such a proceeding does not apply"); see also Johnson v. United States, 529 U.S. 694, 700 (2000) (dealing with revocation of supervised release); Gagnon v. Scarpelli, 411 U.S. 778, 782 (1973) (dealing

-15-

with revocation of probation). To be sure, the conversion of a less restrictive form of punishment, such as supervised release, to a harsher one, such as imprisonment, does entail a deprivation of liberty (albeit conditional liberty). As such, the accused must be accorded a suitable panoply of due process protections. See United States v. Correa-Torres, 326 F.3d 18, 22 (1st Cir. 2003); United States v. Sanchez, 225 F.3d 172, 175 (2d Cir. 2000). The process that is due, however, does not encompass the full sweep of the Sixth Amendment's prophylaxis (such as a right to a jury trial on the facts of the alleged violation). See Morrissey, 408 U.S. at 489; United States v. Czajak, 909 F.2d 20, 24 (1st Cir. 1990). Nor are facts required to be proven beyond a reasonable doubt in such a proceeding. See DeWitt v. Ventetoulo, 6 F.3d 32, 37 (1st Cir. 1993). The appellant's argument that he was constitutionally entitled to such protections collapses under the weight of these authorities.

By like token, the district court did not commit Booker error in imposing the incremental prison term. While the Sixth Amendment does not apply in revocation hearings, a Booker error can occur even absent a Sixth Amendment violation if the sentencing court treats the federal sentencing guidelines as mandatory. See Antonakopoulos, 399 F.3d at 75. That being said, the portions of the sentencing guidelines dealing with revocation of supervised release are merely policy statements. See USSG §§7B1.1-7B1.5.

-16-

Even before <u>Booker</u>, those guidelines were deemed advisory rather than mandatory. <u>See</u> <u>United States</u> v. <u>O'Neil</u>, 11 F.3d 292, 301 n.11 (1st Cir. 1993). They remain advisory to this date. Consequently, resort to them cannot constitute <u>Booker</u> error. <u>See</u> <u>United States</u> v. <u>González-Mercardo</u>, 402 F.3d 294, 303 (1st Cir. 2005) (describing nature of <u>Booker</u> error); <u>Antonakopoulos</u>, 399 F.3d at 75 (same).

## III.  CONCLUSION

We need go no further. We hold, without serious question, that both (i) the lower court's initial imposition of imprisonment plus supervised release and (ii) its subsequent revocation of supervised release coupled with its order for additional imprisonment pass constitutional muster. The short of it is that the proceedings below did not transgress either the teachings of <u>Blakely</u> or the strictures of the Sixth Amendment.

**<u>Affirmed</u>**.