United States Court of Appeals
Fifth Circuit

**F I L E D**

October 21, 2005

Charles R. Fulbruge III
Clerk

*REVISED NOVEMBER 21, 2005*
**In the United States Court of Appeals**

**for the Fifth Circuit**

No. 04-10995

UNITED STATES OF AMERICA

      Plaintiff - Appellee

v.

PEPPER SUE HINSON

      Defendant - Appellant

Appeal from the United States District Court
for the Northern District of Texas
USDC No. 4:00-CR-188-ALL-A

Before JOLLY, DENNIS and OWEN, Circuit Judges.

PRISCILLA R. OWEN, Circuit Judge:

Pepper Sue Hinson contends that the district court violated her Sixth Amendment right to a jury trial in revoking her supervised release and imposing a two-year sentence of re-imprisonment based on facts neither found by a jury nor admitted by her. Because Hinson was not entitled to have a jury determine the facts that gave rise to the revocation of her supervised release or the facts that underpin the duration of her sentence upon revocation, we affirm her sentence.

1

## I

Pepper Sue Hinson pleaded guilty to the possession of stolen mail, which constituted a violation of 18 U.S.C. § 1708. The district court sentenced her to a 30-month term of imprisonment and a three-year term of supervised release. Hinson initially appealed, then dismissed her appeal of that sentence. She served the term of imprisonment, but about one year before the end of her supervised release, the government filed a motion seeking revocation, alleging that Hinson had made unauthorized charges on someone else's credit card and that she had used and possessed illegal drugs. Hinson pleaded true to the illegal drug allegations but not the credit card fraud allegation. At the revocation hearing, evidence was adduced, and the district court found, that Hinson had violated her supervised release as alleged and sentenced her to a 24-month term of imprisonment. Hinson filed this appeal contending that she could not be re-imprisoned and alternatively contending that her right to a jury trial had been violated.

## II

The maximum statutory term of imprisonment under 18 U.S.C. § 1708 for possession of stolen mail was five years,[1] and that offense was a Class D felony.[2] In addition to a prison term, an offender may also be placed on a term of supervised release after imprisonment pursuant to 18 U.S.C. § 3583 as "part of the sentence" for a felony or misdemeanor, and if the terms of supervised release are violated, reimprisoned.[3] The federal criminal statutory scheme envisions that there can be at least

---

[1] 18 U.S.C. § 1708.

[2] *Id*. § 3559(a)(4).

[3] *Id*. § 3583(a), (e)(3).

two components of a sentence:[4]    1) a term of imprisonment up to the maximum prison term permitted in a statute delineating the penalty for a particular offense, such as sections 1708 and 3559,[5] and 2) a term of supervised release as delineated in section 3583[6] with the potential for additional prison time if the terms of supervised release are violated.[7]

Under the Sentencing Guidelines, the range of imprisonment Hinson faced for her possession of stolen mail was 12 to 18 months, and in addition to imprisonment, the district court had the discretion under section 3583 to include a term of supervised release of up to three years. In the judgment imposing a 30-month term of imprisonment, the district court stated that it was departing from the Guidelines, concluding that Hinson's criminal history category of VI did not adequately

---

[4]*Id.*; *see also United States v. Work*, 409 F.3d 484, 489 (1st Cir. 2005) (noting that the "reference to supervised release as being 'part of the sentence' [in section 3583(a)] . . . means that the sentence contains distinct aspects [, which] include the incarcerative term imposed for the crime of conviction (derived from the statute delineating the penalties applicable to that particular offense) and the supervised release term applicable thereto (derived from section 3583)"); *United States v. Gonzalez*, 250 F.3d 923, 928 (5th Cir. 2001) (observing that "supervised release . . . is still considered to be a component of the defendant's total sentence," citing section 3583(a) and noting its statement that supervised release may be included "'as part of the sentence'").

[5]18 U.S.C. §§ 1708, 3559.

[6]*Id.* § 3583(e)(3), (g).

[7]*Id.*; *see also Work*, 409 F.3d at 489 (observing that "courts routinely have held that the combined sentence of years of imprisonment plus years of supervised release may exceed the statutory maximum number of years of imprisonment authorized by the substantive statute applicable to the crime of conviction"); *United States v. Pettus*, 303 F.3d 480, 487 (2d Cir. 2002) (explaining that imprisonment for violation of supervised release coupled with initial imprisonment for the conviction may exceed the statutory maximum prescribed for that offense and that "post-revocation sanctions are properly considered part of the penalty for the initial offense"); *United States v. Wirth*, 250 F.3d 165, 170 n.3 (2d Cir. 2001) (recognizing the well-settled rule "that punishment for a violation of supervised release is separate from punishment for the underlying conviction and may, when combined with the latter, exceed the statutory maximum for the underlying substantive offense").

3

reflect the seriousness of her past criminal conduct or the likelihood that she would commit other crimes. That judgment recounted that although Hinson was only 27 years old at the time, she had 23 prior convictions, including 21 felony offenses and two parole revocations. The district court also imposed the maximum time for supervised release permissible under section 3583 for a Class D felony, which was 24 months.

Hinson first contends that she should have been sentenced to no longer than 18 months for possession of stolen mail rather than 30 months, and that since she completed her 30-month sentence, she cannot be re-imprisoned for violating the terms of her supervised release. She also asserts that the 30-month term was imposed by the district court based on facts that the judge, rather than a jury, found and on facts to which she did not plead guilty. Hinson may not, however, use an appeal of the revocation of her supervised release to attack her original sentence directly or collaterally in this proceeding.[8]

With regard to the revocation, Hinson asserts that a court may not impose a prison term upon revocation of supervised release unless a jury finds beyond a reasonable doubt that the terms of the supervised release were violated or the defendant admits those facts, citing *Blakely v. Washington*,[9] *Apprendi v. New Jersey*,[10] and *United States v. Booker*.[11] We, of course, are bound to apply existing precedent from the United States Supreme Court unless and until that Court expressly overrules that

---

[8]*See United States v. Moody*, 277 F.3d 719, 721 (5th Cir. 2001) (holding that a defendant may not use a challenge to the imposition of supervised released "as a vehicle" for challenging the language of her original indictment or the drug quantity used in calculating her original sentence).

[9]542 U.S. 296 (2004).

[10]530 U.S. 466 (2000).

[11]125 S.Ct. 738 (2005).

precedent.[12]

In *Booker*, the Supreme Court held in an opinion written by Justice Stevens that certain aspects of the Federal Sentencing Guidelines violated the Sixth Amendment right to trial by jury because the Guidelines were mandatory, and if the judge found additional facts by a preponderance of the evidence, the judge was required to sentence an offender to a longer prison term than would otherwise have been the maximum under the Guidelines.[13] The Supreme Court made clear, however, that there would be no Sixth Amendment violation if the Guidelines were merely advisory:

> If the Guidelines as currently written could be read as merely advisory provisions that recommended, rather than required, the selection of particular sentences in response to differing sets of facts, their use would not implicate the Sixth Amendment. We have never doubted the authority of a judge to exercise broad discretion in imposing a sentence within a statutory range.[14]

Mandatory sentencing guidelines have never been applicable to revocation of supervised release, only advisory policy statements apply to sentences imposed upon revocation.[15] The introductory comments in Chapter 7 of the Sentencing Commission Guidelines Manual reflect that the Commission

---

[12]*Rodriguez de Quijas v. Shearson/American Express, Inc.*, 490 U.S. 477, 484 (1989) ("If a precedent of this Court has direct application in a case, yet appears to rest on reasons rejected in some other line of decisions, [the lower court] should follow the case which directly controls, leaving to this Court the prerogative of overruling its own decisions.").

[13]*Booker*, 125 S.Ct at 749-50.

[14]*Id*. at 750 (citing *Apprendi,* 530 U.S. at 481, and *Williams v. New York*, 337 U.S. 241, 246 (1949)).

[15]*See United States v. Escamilla*, 70 F.3d 835 (5th Cir. 1995) ("[T]his court (together with all other circuit courts that have addressed the issue) has consistently held that the policy statements in Chapter 7 of the Sentencing Guidelines are merely advisory and that a court only need *consider* them in rendering a decision."); *United States v. Nace*, 418 F.3d 945, 949 (8th Cir. 2005) ("[E]ven before *Booker* the guidelines applicable to sentences imposed upon revocation of supervised release were advisory only."); *United States v. Work*, 409 F.3d 484, 492 (1st Cir. 2005) ("[T]he portions of the sentencing guidelines dealing with revocation of supervised release are merely policy statements. Even before *Booker*, those guidelines were deemed advisory rather than mandatory.").

chose "to promulgate policy statements only,"[16] explaining that "because of its greater flexibility, the policy statement option will provide better opportunities for evaluation by the courts and the Commission."[17] Accordingly, the concerns that led the Supreme Court to hold that mandatory sentencing guidelines violated the Sixth Amendment do not exist with regard to sentences imposed when supervised release is revoked.

Additionally, in *Booker*, the Supreme Court excised only two specific statutory provisions from the Sentencing Guidelines, "the provision requiring sentencing courts to impose a sentence within the applicable Guidelines ranges," and "the provision that sets forth standards of review on appeal."[18] The Court's opinion written by Justice Breyer explicitly said "[m]ost of the statute is perfectly valid," citing, among other provisions, "§ 3583 (supervised release)" and concluding that the Court "must retain those portions of the Act that are (1) constitutionally valid, (2) capable of 'functioning independently,' and (3) consistent with Congress's basic objectives in enacting the statute."[19] To the extent that Hinson complains that the district court imposed a 24-month sentence based on facts found by the court that were neither found by a jury nor admitted by Hinson, *Booker* is dispositive.

### III

The decision in *Booker* did not, however, squarely address whether a defendant is entitled to a jury trial to determine whether the terms of supervised release have been violated. We see no principled reason for treating revocation of supervised release differently from revocation of parole

---

[16]U.S. SENTENCING GUIDELINES MANUAL, ch. 7, pt. A(1), introductory cmt. (2004).

[17]*Id*. at pt. A(3)(a), introductory cmt. (2004).

[18]*Booker*, 125 S.Ct at 764.

[19]*Id*. at 764 (internal citations omitted).

in this regard. The United States Supreme Court has held that "revocation of parole is not part of a criminal prosecution and thus the full panoply of rights due a defendant in such a proceeding does not apply to parole revocations."[20] The Supreme Court further observed that "[g]iven the previous conviction and the proper imposition of conditions, the State has an overwhelming interest in being able to return the individual to imprisonment without the burden of a new adversary criminal trial if in fact he has failed to abide by the conditions of his parole."[21] In describing the process that was due in revoking parole, the Supreme Court included neither the right to a jury trial nor the burden of proof beyond a reasonable doubt:

> [T]he minimum requirements of due process . . . include (a) written notice of the claimed violations of parole; (b) disclosure to the parolee of evidence against him; (c) opportunity to be heard in person and to present witnesses and documentary evidence; (d) the right to confront and cross-examine adverse witnesses (unless the hearing officer specifically finds good cause for not allowing confrontation); (e) a 'neutral and detached' hearing body such as a traditional parole board, members of which need not be judicial officers or lawyers; and (f) a written statement by the factfinders as to the evidence relied on and reasons for revoking parole. We emphasize there is no thought to equate this second stage of parole revocation to a criminal prosecution in any sense. It is a narrow inquiry; the process should be flexible enough to consider evidence including letters, affidavits, and other material that would not be admissible in an adversary criminal trial.[22]

More recently, in *Johnson v. United States*,[23] decided just one month before *Apprendi*,[24] the Supreme Court considered the nature of revocation of supervised release, concluding that a violation of supervised release may be found by a judge applying a preponderance of the evidence standard.[25]

---

[20]*Morrissey v. Brewer*, 408 U.S. 471, 480 (1972).

[21]*Id*. at 483.

[22]*Id*. at 488-89.

[23]529 U.S. 694 (2000).

[24]*Apprendi v. New Jersey*, 530 U.S. 466 (2000).

[25]*Johnson*, 529 U.S. at 700.

In rejecting the Sixth Circuit's determination that revocation of supervised release imposed

punishment for violating the conditions of supervised release, the Supreme Court reasoned:

> While this understanding [the Sixth Circuit's] of revocation of supervised release has
> some intuitive appeal, the Government disavows it, and wisely so in view of the
> serious constitutional questions that would be raised by construing revocation and
> reimprisonment as punishment for the violation of the conditions of supervised
> release. Although such violations often lead to reimprisonment, the violative conduct
> need not be criminal and need only be found by a judge under a preponderance of the
> evidence standard, not by a jury beyond a reasonable doubt. *See* 18 U.S.C.
> § 3583(e)(3) (1988 ed., Supp. V). Where the acts of violation are criminal in their
> own right, they may be the basis for separate prosecution, which would raise an issue
> of double jeopardy if the revocation of supervised release were also punishment for
> the same offense. Treating postrevocation sanctions as part of the penalty for the
> initial offense, however (as most courts have done), avoids these difficulties. *See, e.g.*,
> *United States v. Wyatt*, 102 F.3d 241, 244-245 (C.A.7 1996) (rejecting double
> jeopardy challenge on ground that sanctions for violating the conditions of supervised
> release are part of the original sentence); *United States v. Beals*, 87 F.3d 854, 859-
> 860 (C.A.7 1996) (noting that punishment for noncriminal violations must be justified
> by reference to original crimes), overruled on other grounds, *United States v. Withers*,
> 128 F.3d 1167 (C.A.7 1997); *United States v. Meeks*, 25 F.3d 1117, 1123 (C.A.2
> 1994) (noting absence of constitutional procedural protections in revocation
> proceedings). *Cf. Gagnon v. Scarpelli*, 411 U.S. 778, 782, 93 S.Ct. 1756, 36
> L.Ed.2d 656 (1973) ("Probation revocation ... is not a stage of a criminal
> prosecution"). For that matter, such treatment is all but entailed by our summary
> affirmance of *Greenfield v. Scafati*, 277 F.Supp. 644 (D.Mass.1967) (three-judge
> court), summarily aff'd, 390 U.S. 713, 88 S.Ct. 1409, 20 L.Ed.2d 250 (1968), in
> which a three-judge panel forbade on ex post facto grounds the application of a
> Massachusetts statute imposing sanctions for violation of parole to a prisoner
> originally sentenced before its enactment. We therefore attribute postrevocation
> penalties to the original conviction.[26]

The Sixth Amendment right to trial by a jury was not at issue in *Johnson*, but based on

*Johnson*'s reasoning, Hinson was not entitled to a jury trial of whether she had committed credit card

fraud in violation of the terms of her supervised release nor was she entitled to have the district court

make findings utilizing the beyond-a-reasonable-doubt standard rather than a preponderance-of-the-

---

[26]*Id*. at 700-01.

evidence standard.[27]   Moreover, Hinson admitted to illegal drug possession and use while on supervised release, and revocation would have been justified based on that admission alone.

## IV

Hinson contends that applying the post-*Booker* remedy of treating the Guidelines as advisory would violate the Constitution's prohibition of *ex post facto* laws.  As we have discussed above, the policy statements applicable to sentencing upon revocation of supervised release have always been advisory.  Hinson faced the same maximum sentence upon revocation of supervised release both before and after *Booker*.

## V

Prior to *Booker*, this Court held that "[b]ecause there are no applicable guidelines for sentencing after revocation of supervised release, this court will uphold a sentence unless it is in violation of the law or plainly unreasonable,"[28] which was consistent with the provisions of section 3742(a) and (e) that applied to sentences "for which there is no sentencing guideline."[29]  In *Booker* the Supreme Court excised subsection 3742(e)[30] and directed appellate courts to "review for unreasonable[ness]."[31]  We need not decide today whether the "plainly unreasonable" standard in subsection 3742(a) continues to apply to sentences imposed upon revocation of supervised release or whether *Booker*'s "unreasonableness" standard governs.  Nor is it necessary to decide if there is a difference between the two standards.  Hinson's sentence passes muster under either and was not

---

[27]*See United States v. Work*, 409 F.3d 484, 492 (1st Cir. 2005) (holding that there is no right to a jury trial or that facts be proven beyond a reasonable doubt in proceedings to revoke supervised release).

[28]*United States v. Gonzalez*, 250 F.3d 923, 925 (5th Cir. 2001) (internal citations omitted).

[29]18 U.S.C. § 3742(a), (e).

[30]*United States v. Booker*, 125 S.Ct. 738, 742 (2005).

[31]*Id*. at 744.

9

imposed in violation of law.

Hinson's sentence is hereby AFFIRMED.