**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 09a0731n.06

Nos. 08-5890, 08-5891

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

**FILED**

**Nov 09, 2009**

LEONARD GREEN, Clerk

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| **Plaintiff-Appellee,** | ) | ON APPEAL FROM THE |
| | ) | UNITED STATES DISTRICT |
| v. | ) | COURT FOR THE MIDDLE |
| | ) | DISTRICT OF TENNESSEE. |
| MARK STEVEN JOHNSON, | ) | |
| | ) | **O P I N I O N** |
| **Defendant-Appellant.** | ) | |
| _____ | ) | |

**Before:  O'CONNOR,**\* **Associate Justice (Ret.); MOORE and COOK, Circuit Judges.**

**KAREN NELSON MOORE, Circuit Judge.**  Defendant-Appellant Mark Steven Johnson appeals several orders relating to the revocation of his supervised release.  Specifically, Johnson challenges the denial of his motion to review the entirety of his U.S. Probation Office ("USPO") case file and the denial of his motion to dismiss the summons to revoke his supervised release.  Johnson also argues that the district court erred in revoking his supervised release and that his sentence was unreasonable.  For the reasons set forth below, we **AFFIRM** the district court's denial of Johnson's motion to review his probation file, the denial of his motion to dismiss, and the revocation of his supervised release.  We find Johnson's sentence procedurally unreasonable, however, and we **VACATE** his sentence and **REMAND** for resentencing.

---

\*The Honorable Sandra Day O'Connor, Associate Justice (Ret.) of the United States Supreme Court, sitting by designation.

# I. BACKGROUND

Johnson pleaded guilty to two counts of bank fraud in violation of 18 U.S.C. § 1344 on November 12, 2002. Pursuant to this guilty plea, the district court sentenced Johnson to concurrent terms of eighteen months' imprisonment followed by concurrent terms of three years' supervised release. The district court also ordered Johnson to pay restitution. Johnson did not appeal his conviction or sentence. Upon release from imprisonment, Johnson began his three-year period of supervised release on December 8, 2004. The supervised-release order imposed the following conditions relevant to this appeal: (1) "defendant shall not commit another federal, state, or local crime," (2) "defendant shall provide the probation officer access to any requested financial information," and (3) "defendant shall not incur new debt or open additional lines of credit without the prior approval of the probation officer unless the defendant is in compliance with the payment schedule for any court-imposed financial sanctions." J., Appellee App. at 5-6; Amend. J., Appellee App. at 18-19.

On April 18, 2007, during his period of supervised release, Johnson was arrested for identity theft and charged with violating Tennessee Code § 39-14-150. Johnson's son, Steve, had discovered three creditors listed on his credit report (Chase Bank, Washington Mutual, and Nashville Tractor) for debts that he had not personally incurred. Because Steve believed it was Johnson who had incurred the debts, he conducted a recorded phone call from the police station to Johnson. During the call, Johnson acknowledged that he had opened Chase Bank and Washington Mutual credit-card accounts in his son's name. Dist. Ct. Revocation Order of 5/19/08 at 3, ¶¶ 9-10, Record on Appeal ("ROA") at 88. Johnson also "acknowledged that he obtained a loan" for "approximately $20,000 from Nashville Tractor." *Id.* at 4, ¶ 11. Johnson denied using Steve's Social Security number to open

the Washington Mutual card or to secure the Nashville Tractor loan. *Id.* at 3-4, ¶¶ 10-11. The State of Tennessee "retired" the criminal charge against Johnson on October 3, 2007, provided that Johnson agree "'to never use his son's name or identifying information for financial gain or to obtain credit.'" *Id.* at 4, ¶14 (quoting Certified Order of Retirement). Johnson also admitted in the Order of Retirement that the credit cards and loan "were obtained by him and not his son." *Id.*

On April 26, 2007, the USPO submitted a Petition for Summons ("Petition") alleging that Johnson had violated the three above-mentioned conditions of his supervised release and recommending the revocation of his supervised release. Pet., ROA at 9-12. In support of revocation, Johnson's probation officer claimed that Johnson had failed to "provide the probation officer with supporting documentation for the net worth statement he provided, along with amended tax returns for 2005 and a promissory note from August 2003," which the USPO had requested. *Id.* at 11. The Petition indicated that Johnson had been arrested on the state identity-theft charge and had admitted to opening and using two credit cards under his son's name and Social Security number. *Id.* at 12. The officer also alleged that Johnson had failed to provide information about the purchase of a new big-screen hi-definition television and security-camera system, as requested. *Id.* at 11. The district court issued the summons and scheduled a hearing. *Id.* at 9.

Prior to the hearing, Johnson filed a motion to review his USPO case file for the purposes of preparing for the hearing and obtaining evidence "relevant to the court's decision . . . whether to revoke Mr. Johnson's supervised release, the length of any incarceration if the supervised release is revoked[ and whether] to impose an additional term of supervised release." Def. Mot. to Review File, ROA at 13, 15. The Government opposed the request, responding that the Federal Rules of Criminal Procedure require release of only the evidence used against the defendant. Gov't Resp.,

3

ROA at 16-17. The district court denied Johnson's motion, finding that "Defendant was provided with the relevant documents from the USPO file" pursuant to the Federal Rules of Criminal Procedure and Sixth Circuit case law. Order of 9/10/07 Denying Mot. to Review, ROA at 42.

On July 20, 2007, Johnson filed a motion to dismiss the Petition in its entirety, arguing that "the supervised-release regime of 18 U.S.C. § 3583 and Fed. R. Crim. P. 32.1(b) violates both the Fifth and Sixth Amendments to the United States Constitution" because any prison sentence that could result from the revocation proceeding "will be authorized solely by judicial factfinding" based upon a preponderance of the evidence. Mot. to Dismiss, ROA at 19. The Government responded that Fifth and Sixth Amendment protections were not applicable in the context of revocation proceedings and Federal Rule of Criminal Procedure 32.1 adequately protected Johnson's due-process rights. Gov't Resp., ROA at 35-36. The Government also noted that the revocation proceeding would "not expose defendant to a penalty greater than the statutory maximum to which he was exposed to at the time he committed the underlying offense nor to a penalty greater than that to which he was sentenced." *Id.* at 38. The district court held a hearing on October 5, 2007, and denied Johnson's motion to dismiss. Order of 10/15/07 Denying Mot. to Dismiss, ROA at 57.

The district court proceeded with the revocation hearing on March 21 and March 26, 2008. Johnson's probation officer, his son Steve, and his daughter-in-law testified on the Government's behalf. The Government also introduced a recording of the conversation between Johnson and Steve, Johnson's Presentence Investigation Report ("PSR") from the underlying criminal conviction, and an official copy of the Tennessee Order of Retirement for the identity-theft charge. Ultimately, the district court concluded that the preponderance of the evidence supported the conclusion that Johnson had violated the terms of his supervised release by committing identity theft and by failing

4

to provide the USPO with financial information as requested and required. Dist. Ct. Revocation Order of 5/19/08 at 6-7, ROA at 91-92. The district court concluded, however, that the preponderance of the evidence failed to support a violation of the third condition—that Johnson not open new lines of credit without prior of approval unless he was compliant with the payment schedule for his court-imposed restitution. *Id.* at 92. As a result of the two violations, the district court revoked Johnson's supervised release and sentenced him to twenty months' imprisonment, which was above the recommended Guidelines range. Johnson filed a timely appeal.

## II. ANALYSIS

### A. Motion to Review Entire USPO

Johnson argues that the district court erred in denying his motion to review his entire USPO probation file in light of Federal Rule of Criminal Procedure 32.1, which entitles the defendant to "present any information in mitigation" during a revocation hearing. Johnson claims that because of the extensive discretion judges are afforded in imposing a prison sentence after the revocation of supervised release, his "counsel needed access to the file to be prepared for . . . the functional equivalent of a sentencing hearing" and that the district court's refusal to allow access to the file curtailed improperly Johnson's ability to present mitigating evidence during the sentencing phase of his revocation hearing. Appellant Br. at 17. We find Johnson's argument unavailing.

This court reviews a district court's discovery-based rulings under the Federal Rules of Criminal Procedure for abuse of discretion, and a district court's determination will be reversed only if the abuse of discretion caused more than harmless error. *See United States v. White*, 492 F.3d 380, 398 (6th Cir. 2007). Federal Rule of Criminal Procedure 32.1 governs supervised-release-revocation hearings. In relevant part, Rule 32.1(b)(2) provides that a person subject to a revocation hearing "is

5

entitled to: . . . (B) disclosure of the evidence against the person; [and] . . . . (E) an opportunity to make a statement and present any information in mitigation." Fed. R. Crim. P. 32.1(b)(2). In support of its position that disclosure of the USPO file was not required, the Government relies on *United States v. Guardino*, 972 F.2d 682 (6th Cir. 1992). In *Guardino*, a panel of this court noted in dicta that then-existing Rule 32.1(a)(2) (today's Rule 32.1(b)(2)(B)), "require[d] the government to disclose . . . evidence only if it was actually used against the probationer." *Id.* at 689. The *Guardino* panel held that because the probationer's notice of appeal was untimely, the panel lacked jurisdiction to consider whether the district court had erred in denying a motion to compel production of a probation officer's memo for purposes of a probation-revocation hearing. *Id.* at 685, 689. Despite this jurisdictional defect, however, the panel stated that "[e]ven if" it had jurisdiction, it would affirm the district court's denial of the probationer's motion because the officer's "memo was not used as evidence during any of the revocation hearings," and the district court did not rely on the memo in revoking probation. *Id.* at 689. As a result, the panel indicated that the memo did not fall within the purview of today's Rule 32.1(b)(2)(B). *Id.* Contrary to the Government's contention, then, *Guardino*'s analysis of Rule 32.1 was dicta and is not controlling. *Guardino* is further distinguishable from the instant case because Johnson is seeking access to mitigating information under Rule 32.1(b)(2)(E), which was not added to the Rules until 2005, and which *Guardino* could not, therefore, have addressed.

Johnson, however, has presented no authority for the rule he proposes this panel adopt—that his Rule 32.1(b)(2)(E) right to "present any information in mitigation" also embodies a right to unfettered access to a probation officer's file to search for that information. Johnson argues that because "the probation office was actively communicating with the State prosecution" about a

variety of case-related matters, "there is much room for unrevealed information." Appellant Br. at 19. But this statement alone does not persuade us that Johnson was likely to uncover mitigating evidence material to his case if he were allowed access to the USPO file, thus requiring the conclusion that the district court abused its discretion in denying his motion. Johnson's broad rule, as proposed, would turn a hearing-based right to present mitigating evidence into an unrestricted right of pre-hearing discovery. Defendants in criminal trials are not even entitled under the Federal Rules of Criminal Procedure to the extent of pre-trial discovery that Johnson seeks from the USPO. *See generally* Fed. R. Crim. P. 16 (outlining discovery and inspection obligations).[1] As a result, we conclude that under these particular circumstances, the district court did not abuse its discretion in denying Johnson's motion to review the USPO file for unidentified and entirely speculative information.

## B. Motion to Dismiss Petition to Revoke Supervised Release

Johnson further contends that Federal Rule of Criminal Procedure 32.1 and 18 U.S.C. § 3583, which together govern supervised release, violate the Sixth Amendment to the U.S. Constitution. Specifically, Johnson contends the supervised-release provisions cannot survive the Supreme Court's decisions in *Blakely v. Washington*, 542 U.S. 296 (2004), and *Apprendi v. New Jersey*, 530 U.S. 466

---

[1]This circuit has never explicitly determined whether the discovery obligations under Federal Rule of Criminal Procedure 16 apply to supervised-release-revocation hearings. However, Rule 16 may apply by virtue of the fact that supervised-release hearings were not explicitly excluded by Rule 1(a)(5). *See* Fed. R. Crim. P. 16 (discovery and inspection obligations); *id.* 1(a)(5) (listing the "[p]roceedings not governed by" the Federal Rules of Criminal Procedure); *cf. United States v. Waters*, 158 F.3d 933, 942-43 (6th Cir. 1998) (finding that "[b]ecause supervised release revocation is not listed as an exception" to Rule 43(a)'s requirement that a defendant be present when sentenced, the Rule applied to supervised-release revocation hearings). Although Rule 1 (former Rule 54) was promulgated before the advent of supervised release, *see* 18 U.S.C. § 3583, in 2002 the Rule drafters modified the exclusions list without adding supervised-release or probation-revocation hearings. *See* Fed. R. Crim. P. 1 Advisory Comm. Notes (2002 amends.).

(2000), as affirmed in *United States v. Booker*, 543 U.S. 220 (2005), because the provisions authorize the imposition of a prison sentence above that permitted by the initial fact of conviction and one based solely on judicial fact finding by the preponderance of the evidence.[2] Appellant Br. at 20, 22. Johnson asserts that while the facts he admitted in his guilty plea to bank fraud "established the range of the period of incarceration, fine amount, restitution, supervised release range, and special assessment amounts[,] . . . . his guilty plea[] did not establish how long he could serve on a supervised release violation sentence *in prison*; that determination required further factual findings made by the District Court [in 2008], without a jury, by a preponderance of the evidence and without an indictment." *Id.* at 21 (emphasis in the original). In essence, Johnson argues that he is entitled to "constitutionally adequate procedures" such as a grand jury indictment, proof beyond a reasonable doubt, and the right to a jury trial before the district court can revoke his supervised release and institute a prison term. *Id.* at 21-22.

We review de novo constitutional issues. *J.L. Spoons, Inc. v. Dragani*, 538 F.3d 379, 382 (6th Cir. 2008). The Supreme Court and the Sixth Circuit have yet to address explicitly the impact of *Booker*, *Apprendi*, and *Blakely* on the supervised-release framework. Every circuit court to confront the issue, however, has concluded that 18 U.S.C. § 3583 remains constitutional as applied in the context of supervised-release revocation, albeit on varying grounds. *See, e.g.*, *United States*

---

[2]Johnson's argument that his Fifth Amendment right to due process was violated by a preponderance-of-the-evidence standard in his sentencing is foreclosed by *United States v. Jones*, 489 F.3d 243, 250 (6th Cir. 2007). *See United States v. Johnson*, 529 U.S. 694, 700 (2000) ("[T]he violative conduct . . . need only be found by a judge under a preponderance of the evidence standard, not by a jury beyond a reasonable doubt.). Although Johnson claims the *Jones* "line of cases was wrongly decided," Appellant Br. at 20, this panel is not at liberty to overrule the decision of another panel or the Supreme Court. *See Salmi v. Sec'y of Health & Human Servs.*, 774 F.2d 685, 689 (6th Cir. 1985).

*v. Carlton*, 442 F.3d 802, 807 (2d Cir. 2006); *United States v. Dees*, 467 F.3d 847, 853 (3d Cir. 2006), *cert. denied*, 128 S. Ct. 52 (2007); *United States v. Faulks*, 195 F. App'x 196, 198 (4th Cir. 2006) (unpublished), *cert. denied*, 128 S. Ct. 38 (2007); *United States v. Huerta-Pimental*, 445 F.3d 1220, 1225 (9th Cir.), *cert. denied*, 549 U.S. 1014 (2006); *United States v. Cordova*, 461 F.3d 1184, 1186-88 (10th Cir. 2006); *United States v. Hinson*, 429 F.3d 114, 119 (5th Cir. 2005), *cert. denied*, 547 U.S. 1083 (2006); *United States v. Work*, 409 F.3d 484, 491 (1st Cir. 2005); *United States v. Coleman*, 404 F.3d 1103, 1104 (8th Cir. 2005). We join these circuits in concluding that 18 U.S.C. § 3583 and Federal Rule of Criminal Procedure 32.1 remain constitutional.

In *Morrissey v. Brewer*, 408 U.S. 471 (1972), the Supreme Court indicated that "the full panoply of rights due a defendant in a [criminal] proceeding does not apply to parole revocations" because those proceedings are not a "criminal prosecution in any sense." *Id.* at 480, 489. The Supreme Court extended its reasoning to probation-revocation hearings in *Gagnon v. Scarpelli*, 411 U.S. 778, 782 (1973). Given the similarities between parole, probation, and supervised release, we have considered the relevant revocation procedures to be analogous for constitutional purposes. *See United States v. Kirby*, 418 F.3d 621, 627 (6th Cir. 2005); *cf. Johnson*, 529 U.S. at 710-11 (noting the similarity between supervised release and parole).

Like parole and probation revocation, a supervised-release-revocation hearing necessarily occurs after a court has sentenced the defendant for the underlying crime of conviction and after the defendant has served the initial term of imprisonment. *Cf. Morrissey*, 408 U.S. at 480 ("Parole arises after the end of the criminal prosecution, including imposition of sentence."). Johnson's argument that he merits full Sixth Amendment procedural protection during his supervised-release-revocation hearing fails to appreciate the Supreme Court's distinction between a hearing where the court

9

imposes the initial criminal sentence and a hearing where the court fashions a subsequent term of imprisonment for a violation of a condition of supervised release—i.e., a portion of that initial criminal sentence. *See Johnson*, 529 U.S. at 700-01 (concluding that post-revocation penalties are attributable to the "original conviction" and not issued as punishment for the violation of a term of supervised release). With regard to the revocation proceeding, Johnson had already been convicted of the underlying crime and was not being subjected to further criminal prosecution so as to necessitate full constitutional protection. *See Morrissey*, 408 U.S. at 489 ("We emphasize there is no thought to equate this second stage of parole revocation to a criminal prosecution in any sense."). "'Revocation deprives an individual, not of the absolute liberty to which every citizen is entitled, but only of the conditional liberty properly dependent on observance of special parole restrictions.'" *Carlton*, 442 F.3d at 809-10 (quoting *Gagnon*, 411 U.S. at 781). Thus, in light of these precedents, supervised-release-revocation proceedings do not require an indictment, the beyond-a-reasonable-doubt standard, or a jury trial.

Johnson attempts to distinguish probation- and parole-revocation cases from cases involving the revocation of supervised release. He argues that, unlike supervised release, probation revocation and the parole system do not "involve imposing a sentence beyond that authorized by the jury's verdict." Appellant Br. at 25. Instead, Johnson asserts that probation- and parole-revocation proceedings effectively require the sentencing court to start over and "impose any sentence that it could have imposed on the day of the original sentencing"—they are an "activation of the previous sentence." *Id.* at 25-26. But, as noted above, the Supreme Court has indicated that supervised release is, in fact, "part of the penalty for the initial offense," *Johnson*, 529 U.S. at 700, and because "supervised release is authorized by the original conviction . . . so too are the consequences of its

10

violation." *United States v. McNeil*, 415 F.3d 273, 277 (2d Cir. 2005). Thus, the argument that a supervised-release sentence is completely divorced from the underlying conviction so as to undercut an analogy to parole- and probation-revocation hearings is without merit. *See Hinson*, 429 F.3d at 118-19.

In sum, there is nothing post-*Booker* that causes us to question the continuing validity of the supervised-release-revocation framework. In fact, contrary to Johnson's argument, the Supreme Court's dicta in *Booker* provides support for the conclusion that the supervised-release regime remains constitutional. When discussing the general constitutionality of the Sentencing Reform Act of 1984, and which portions must be severed, the Court noted that "[m]ost of the statute," including 18 U.S.C. § 3583, "is perfectly valid." *Booker*, 543 U.S. at 258 (listing provisions); *see also Hinson*, 429 F.3d at 117-18 (relying on *Booker* dicta for this conclusion); *Coleman*, 404 F.3d at 1104 (same).

Even if *Apprendi* and its progeny were applicable, however, Johnson has failed to show error. *Apprendi* and *Blakely* require that "[a]ny fact (other than a prior conviction) which is necessary to support a sentence exceeding the maximum authorized by the facts established by a plea of guilty or a jury verdict must be admitted by the defendant or proved to a jury beyond a reasonable doubt." *Booker*, 543 U.S. at 244. In essence, the potential maximum prison sentence a defendant can serve is established at the time of the verdict or the guilty plea for the underlying conviction. In this case, the district court did not exceed the maximum sentence Johnson's guilty plea authorized—a maximum thirty-year prison term for bank fraud under 18 U.S.C. § 1344, a five-year term of supervised release, *id.* § 3583(b)(1), and an additional three-year term of imprisonment if he violated his conditions of supervised release, *id.* § 3583(e)(3). Johnson received an eighteen-month prison sentence, followed by a three-year period of supervised release, followed by an additional twenty-

11

month period of imprisonment when the district court determined that he violated his supervised-release conditions. The revocation of supervised release did not impose any punishment that the guilty plea did not authorize. In conclusion, Johnson is not entitled to the protections he seeks, and his argument that Federal Rule of Criminal Procedure 32.1 and 18 U.S.C. § 3583 are unconstitutional must fail.

## C. Revocation of Supervised Release

Johnson's next contention—that insufficient evidence supported the district court's determination that he violated the conditions of his supervised release—is also unavailing. We review a district court's revocation of an individual's supervised release for abuse of discretion, its fact findings for clear error, and its legal conclusions de novo. *United States v. Kontrol*, 554 F.3d 1089, 1091-92 (6th Cir. 2009). A district court may revoke a defendant's supervised release if it "finds by a preponderance of the evidence that the defendant violated a condition of supervised release." 18 U.S.C. § 3583(e)(3).

As the first ground for revocation, the Petition alleged that Johnson violated the mandatory condition prohibiting him from committing another federal, state, or local crime, *see* 18 U.S.C. § 3583(d), by being arrested and charged with identity theft. Pet., ROA at 10. Tennessee Code § 39-14-150 defines identity theft as "knowingly transferring or using, without lawful authority, a means of identification of another person with the intent to commit any unlawful activity." *State v. Bowman*, No. W2003-02389-CCA-R3-CD, 2005 WL 94365, at *2 (Tenn. Crim. App. Jan. 13, 2005) (unpublished). Johnson argues that the district court's conclusion was improper because the evidence established that he had permission to use his son's information. Appellant Br. at 34.

12

Despite Johnson's claim, sufficient evidence supported the district court's conclusion that Johnson did not have permission to use his son's information and that, as a result, his actions constituted identity theft. In both a recorded phone call and the Tennessee Order of Retirement, Johnson admitted to opening two credit cards and obtaining a loan in his son's name. Johnson's son was unaware of the transactions, denied authorizing them, and never received or used the two credit cards. Although Johnson attempted to show that he had a valid power of attorney that allowed him to engage in such activity in his son's name, at no point during the hearing did Johnson contest his arrest or the fact that he admitted to engaging in the charged activity. Furthermore, the purported power of attorney was never authenticated or admitted as evidence, and the district court, as the trier of fact, was entitled to find Johnson's explanation for his actions incredible. Given this evidence, the district court did not clearly err in its conclusion that Johnson committed the state crime of identity theft, which violated one of his conditions of supervised release.

As a violation of one condition is sufficient to revoke supervised release, we "need not address" the additional violations because, even assuming district-court error, that error "would be harmless." *United States v. Lindo*, 52 F.3d 106, 108 (6th Cir. 1995) (indicating that one or more probation violations was sufficient to support district court's discretionary determination to revoke probation); *see also United States v. Lewis*, No. 97-5786, 1998 WL 58145, at *2 (6th Cir. Feb. 4, 1998) (unpublished) (citing *Lindo* in the context of supervised release). In conclusion, a preponderance of the evidence supported the conclusion that Johnson violated at least one of his conditions of supervised release, and this infraction required its revocation.[3]

---

[3]The commission of a federal, state, or local crime is considered a "Grade B" violation under the U.S. Sentencing Guidelines § 7B1.1(a). Upon finding a Grade B violation, the district court was required to revoke Johnson's supervised release. *See* USSG § 7B1.3(a)(1).

**D. Reasonableness of the Sentence**

Johnson's final argument is that the district court abused its discretion in imposing an above-Guidelines, twenty-month sentence. Appellant Br. at 33. "In this circuit, sentences imposed following revocation of supervised release are to be reviewed under the same abuse of discretion standard that we apply to sentences imposed following conviction." *United States v. Polihonki*, 543 F.3d 318, 322 (6th Cir. 2008) (quotation and alteration omitted). Before reviewing the district court's sentence for substantive reasonableness, we must first determine whether the district court committed any procedural error. *See id.* (citing *Gall v. United States*, 552 U.S. 38, 128 S. Ct. 586, 591, 598 (2007)). A district court abuses its sentencing discretion if it

> commit[s] [a] significant procedural error, such as failing to calculate (or improperly calculating) the Guidelines range, treating the Guidelines as mandatory, failing to consider the § 3553(a) factors, selecting a sentence based on clearly erroneous facts, or failing to adequately explain the chosen sentence—including an explanation for any deviation from the Guidelines range.

*Gall*, 128 S. Ct. at 597; *see also Polihonki*, 543 F.3d at 322. We conclude that the district court committed significant procedural errors by failing to calculate the relevant Guidelines range, by failing to articulate a specific reason for its above-range sentence, and by failing to address Johnson's nonfrivolous arguments for an alternative to the Guidelines sentence.

Title 18 U.S.C. § 3553(c)(2) directs a district court to state the reasons for a particular sentence and, if the sentence falls outside the applicable Guidelines range, to state "the specific reason for the imposition of a sentence different from" the recommended range. 18 U.S.C. § 3553(c)(2). "The district court must also acknowledge the defendant's applicable Guideline range." *United States v. Blackie*, 548 F.3d 395, 400 (6th Cir. 2008) (quotation omitted). "A

14

sentence imposed without complying with the requirements of § 3553(c) constitutes error." *Id.* at 400-01.

The Government conceded in its brief and at oral argument that the district court erred in failing to acknowledge the appropriate Guidelines range at the sentencing hearing or in its sentencing order. Appellee Br. at 32. Despite these admitted deficiencies, the Government nevertheless argues that all parties were "inherently aware of the reasons why the district court imposed a sentence outside the advisory range" and that the district court was not required to state the appropriate range because Johnson listed the range in his sentencing memorandum and the Government mentioned the range during the sentencing hearing. *Id.* at 33; *see also* Sent. Hr'g Tr. at 12; Def. Sent. Mem., ROA at 94. The Government's arguments are without merit.

As we indicated in *Blackie*, the requirement that the sentencing court state the applicable Guidelines range is more than a mere formality; the requirement exists to "assure that the court has properly calculated the applicable Guidelines range, and that adequate explanation is provided to allow for meaningful appellate review and the perception of a fair sentence." *Blackie*, 548 F.3d at 401 (citing *Gall*, 128 S. Ct. at 597-98); *see also United States v. Grams*, 566 F.3d 683, 685-86 (6th Cir. 2009). In addition to the district court's failure to identify the appropriate Guidelines range, the district-court record provides this panel with little to facilitate appellate review of the reasonableness of the sentence. The district court never acknowledged that it knew it was sentencing above the recommended range, nor did it engage in an analysis of its reasons for doing so, assuming it was even aware. In fact, the district court's statement of reasons in the transcript for issuing the "maximum" sentence available in light of Johnson's initial term of supervised release—which, again, failed to acknowledge that the sentence was above the recommended Guidelines range—is

15

less than one page long and fails to state a specific reason for the sentence other than the fact that the court believed Johnson had "no conscience" and needed to be imprisoned to conform his behavior to the dictates of the law. Sent. Hr'g Tr. at 20-21. This is clearly insufficient under *Blackie*.

Furthermore, "[a]lthough the district court is not required to give the reasons for rejecting any and all arguments made by the parties for alternative sentences, for a sentence to be procedurally reasonable when a defendant raises a particular, nonfrivolous argument in seeking a lower sentence, the record must reflect both that the district judge considered the defendant's argument and that the judge explained the basis for rejecting it." *United States v. Gapinski*, 561 F.3d 467, 474 (6th Cir. 2009) (quotations, internal citations, and alterations omitted). Johnson submitted a nine-page sentencing memorandum setting forth a variety of reasons why he believed he merited a non-custodial or below-Guidelines sentence. *See* Def. Sent. Mem., ROA at 94-102. Those reasons included Johnson's charitable efforts, his deteriorating health, his age, his lack of dangerousness, the costs of incarceration compared to house arrest or supervision, and his greater ability to provide restitution to the victims of the underlying crime of conviction if not incarcerated. *Id.* As outlined above, the district court failed to address any of these arguments.

As the Government again conceded, the only remedy for these procedural errors is to remand for resentencing.[4] Because we find significant procedural error, we need not address Johnson's claim that the sentence was substantively unreasonable. *See Gall*, 128 S. Ct. at 597.

---

[4]Johnson's argument that the district court erred in considering punishment as a factor in imposing his sentence is foreclosed by *United States v. Lewis*, 498 F.3d 393, 399-400 (6th Cir. 2007). In *Lewis*, a panel of this court concluded that "it does not constitute reversible error to consider § 3553(a)(2)(A) [punishment] when imposing a sentence for violation of supervised release, even though this factor is not enumerated in § 3583(e)."

16

### III. CONCLUSION

For the reasons explained above, we **AFFIRM** the district court's denial of Johnson's motion to dismiss, the denial of his motion to review his USPO file, and the revocation of Johnson's supervised release. Because of the procedural error in Johnson's sentencing we **VACATE** his sentence and **REMAND** for resentencing. We encourage the district court to proceed expeditiously because Johnson's twenty-month term of imprisonment will soon conclude.