**UNITED STATES of America,**
**Appellee,**

v.

**Steven M. WIRTH, Defendant–**
**Appellant.**

**No. 99–1743.**

United States Court of Appeals,
Second Circuit.

Argued July 11, 2000.

Decided May 17, 2001.

166

Joseph A. Bondy, New York, NY, for Defendant–Appellant.

Miriam H. Baer, Assistant United States Attorney, New York, N.Y. (Mary Jo White, United States Attorney, and Andrew J. Ceresney, Assistant United States Attorney, on the brief), for Appellee.

Before: WALKER, Chief Judge, WINTER and JACOBS, Circuit Judges.

PER CURIAM:

Defendant-appellant Steven M. Wirth appeals from a November 24, 1999 amended judgment of the United States District Court for the Southern District of New York (Rakoff, *J.*). Wirth pled guilty to conspiracy to commit fraud in violation of

18 U.S.C. § 371 and was sentenced to 45 months' imprisonment and three years of supervised release. When he violated the conditions of his supervised release by testing positive for narcotics, the district court modified his supervised release to include a drug treatment program. After Wirth violated the terms of his modified supervised release by failing to report to the Probation Department as ordered, the court revoked his supervised release and sentenced him to a term of imprisonment of two years. On appeal, Wirth argues that he could not have violated terms of supervised release because the district court's first modification amounted in effect to a termination of supervision altogether. Because we find that the district court was required to terminate Wirth's supervised release and to sentence Wirth to a term of imprisonment after his first violation, and because we decline now to affirm a sentence for violating terms of supervised release that should not have been imposed in the first place, we vacate the judgment and remand for sentencing on the first violation.

## BACKGROUND

On December 4, 1998, Wirth began serving his three-year term of supervised release. On October 7, 1999, the probation department filed a petition with the district court charging Wirth with failing to report to the Probation Department, using cocaine, failing to submit to drug testing, and failing to submit his monthly supervision reports. The department requested a warrant for Wirth's arrest, requested that his supervised release be revoked, and recommended that he either be assigned to a twelve-month residential treatment pro-

gram or be given a custodial term close to the statutory maximum.

On October 15, 1999, Wirth was arrested and released on the condition that he appear three days later for a drug test. On October 18, 1999, Wirth tested positive for cocaine, as a result of which his bail was revoked and he was remanded into custody. On October 19, 1999, the district court conducted its first hearing.

*The October 19 Hearing*

At the hearing, a misunderstanding developed among the judge and the parties as to: 1) whether Wirth's supervised release would be revoked, or merely modified, and 2) whether he would be placed in a custodial drug treatment program.[1] The following colloquy ensued:

THE COURT: Let me ask counsel for the government, have there been any promises made to this defendant in connection with his desire to admit these specifications?

MS. BAER: No, your Honor.

THE COURT: Does counsel for the defense concur that is the case?

MR. BONDY: The only representation that's been made, your Honor, is that if he admits the violation and is willing to go into a 12 month inpatient program, that the government will not seek incarceration. But that is the sum total of any agreement.

THE COURT: Is that correct?

MS. BAER: That he agreed to at least a minimum 12 month residential program.

THE COURT: Okay. You have heard what the counsel for the government and your counsel says is the only agreement they have. Is that your understanding as well, Mr. Wirth?

---

1. We employ a distinction, which was not at first clear to the parties, between a *residential* program and a *custodial* one. "Residential" means that defendant lives at the facility, but does so voluntarily. "Custodial" means that the defendant is kept at the facility by force.

THE DEFENDANT: I understand what was just said. I'm not quite sure what I am agreeing to here.

THE COURT: I'm not asking you to agree to anything.

THE DEFENDANT: The answer is yes.

Wirth then admitted to all charged violations of his supervised release, including use of cocaine, and asked to be sentenced immediately. The district court thereafter stated: "I am going to sentence the defendant to a twelve month residential drug treatment program." Later in the proceeding, the following exchange ensued:

THE DEFENDANT: I want to be very clear about what happened here. I have just been sentenced to a term of 12 months in a drug program.

THE COURT: Yes, in a residential treatment.

After some discussion, the government sought to clarify that the sentence would not terminate his supervised release, but would be an additional condition to that release. In the course of this final conversation, the misunderstanding came to light:

MS. BAER: If I could just confirm that Mr. Wirth will still continue to be under supervised release and that now a special condition of supervised release is that he complete the 12 month residential treatment program.

THE DEFENDANT: I totally misunderstood. I was sentenced to 12–months and in my understanding I have violated and [been] sentenced. There is no continuing supervised release.

THE COURT: Mr. Wirth, I think now I begin to understand both why you have been adept at helping people in their sentencing problems[2] and also why you have been successful in your career as a con man.

Wirth argued that the district court had: 1) revoked his supervised release, 2) imposed a sentence of 12 months at a residential drug treatment program, which Wirth would be free to leave, and 3) lost its authority to reimpose supervised release. Recognizing Wirth's strategy, the court adjourned the proceedings "in light of the issues raised by the defendant."

*The October 20, 1999 Hearing*

On the following day, the district court began by noting that it had been inaccurately informed of the position of the parties and of the programs that might be available, and stated that it "regards the sentence that was imposed yesterday as a nullity . . . and, alternatively, believes that, in any event, the sentence needs to be corrected." It added:

THE COURT: What I intended and what I believed I had imposed was that, in lieu of supervised release, this defendant would spend a year in a custodial drug treatment facility in the Tennessee area, that supervised release would end but that he would not be free to leave, that he would be in custody and that he would be in a drug treatment program.

The court also noted that "there had not been a meeting of the minds even on what we were talking about." The government reiterated that its intention was only to add to Wirth's supervised release the condition that he attend a 12 month drug treatment program. The court adjourned the hearing to allow the parties to determine whether any such program existed.

---

**2.** Wirth had worked, while on supervised release, as a paralegal specializing on sentencing issues.

*The October 22, 1999 Hearing*

At a third hearing, on October 22, 1999, it became clear that a custodial drug treatment program did not exist, apart from programs available in the federal prison system. After acknowledging this fact, the court stated that the October 19, 1999 "sentence" was "at best" an "ambiguous statement which would not constitute a final sentencing judgment." In the alternative, the court noted that any sentence would have been subject to correction under Fed.R.Crim.P. 35 within seven days because it had consisted of a program that did not exist. The court announced its intention to modify Wirth's supervised release conditions to include a twelve-month residential drug treatment program.

*The Second Supervised Release Violation*

In a written order dated October 22, 1999, the court modified Wirth's supervised release conditions as indicated at the hearing. It also ordered Wirth to report to the probation department on October 29, 1999. Wirth failed to report to the probation department and, on November 18, 1999, was arrested. On November 24, 1999, Wirth appeared again before the district court and was sentenced to a term of incarceration of two years.

At oral argument of this appeal, we requested additional briefing, which the parties supplied.

## DISCUSSION

■ When a district court is faced with a violation of supervised release, it has "broad discretion to revoke its previous sentence and impose a term of imprisonment." *United States v. Sweeney*, 90 F.3d 55, 57 (2d Cir.1996). The district court is not bound by any sentencing guidelines in doing so; it is directed, however, to consider policy statements in Chapter Seven of the Guidelines Manual. *See id.*; U.S.S.G. §§ 7B1.1–1.5; *see also* 18 U.S.C. § 3553(a)(4)(B). We reverse a district court's imposition of a sentence in the absence of an applicable sentencing guideline only if "it is plainly unreasonable." 18 U.S.C. § 3742(a)(4); *Sweeney*, 90 F.3d at 56.

■ We think that the district court's failure to imprison Wirth upon his first violation of supervised release was plainly unreasonable. The applicable statute states:

> If the defendant is found by the court to be in the possession of a controlled substance, the court shall terminate the term of supervised release and require the defendant to serve in prison not less than one-third of the term of supervised release.

18 U.S.C. § 3583(g) (pre 1994 version). Following the plain meaning of the statute, especially its use of the mandatory term "shall," we think the district court was obligated, upon Wirth's initial admission of cocaine use, to terminate his supervised release and impose a term of imprisonment of at least one-third of his term of supervised release, or not less than one year. We therefore remand the case for resentencing.

■ Wirth argues that § 3583(g) does not apply because he admitted only to using cocaine, not to possessing it. Although this circuit has never addressed the question, the majority of circuits have held that testing positive for drug use amounts to possession under § 3583(g). *See United States v. Hancox*, 49 F.3d 223, 224–25 (6th Cir.1995); *United States v. Battle*, 993 F.2d 49, 50 (4th Cir.1993); *United States v. Dow*, 990 F.2d 22, 24 (1st Cir.1993); *United States v. Rockwell*, 984 F.2d 1112, 1114–15 (10th Cir.1993); *United States v. Courtney*, 979 F.2d 45, 49 (5th Cir.1992); *United States v. Baclaan*, 948 F.2d 628,

630 (9th Cir.1991); *United States v. Blackston*, 940 F.2d 877, 891–92 (3rd Cir.1991). We agree with these decisions and now hold that use of narcotics amounts to possession thereof for the purposes of § 3583(g).

 We recognize that § 3583 was amended in 1994 to allow district courts to carve out an exception to § 3583(g) in cases where a substance abuse treatment program is available and appropriate. *See* 18 U.S.C. § 3583(d) (1994) ("The court shall consider whether the availability of appropriate substance abuse treatment programs, or an individual's current or past participation in such programs, warrants an exception in accordance with United States Sentencing Commission guidelines from the rule of section 3583(g) when considering any action against a defendant who fails a drug test."). However, the Supreme Court has recently held that § 3583(h), which was added as part of the 1994 amendments, does not apply retroactively to cases in which the initial offense was committed before September 13, 1994, the effective date of the 1994 amendments. *See Johnson v. United States*, 529 U.S. 694, 702, 120 S.Ct. 1795, 146 L.Ed.2d 727

(2000). The government now concedes, and Wirth does not contend otherwise, that *Johnson* should apply likewise to § 3583(d) and that, because Wirth committed the underlying offenses in 1990 and 1991, his case is therefore governed by the pre–1994 version of § 3583.[3]

Wirth argues that the district court had discretion, even under the pre–1994 version of § 3583, to substitute a drug treatment program for a term of imprisonment after it terminated his supervised release. In particular, Wirth maintains that U.S.S.G. § 5C1.1(e) authorizes substitution of drug treatment for imprisonment. Application Note 6 states that "[t]here may be cases in which a departure from the guidelines by substitution of a longer period of community confinement than otherwise authorized for an equivalent number of months of imprisonment is warranted to accomplish a specific treatment purpose (*e.g.*, substitution of twelve months in an approved residential drug treatment program for twelve months of imprisonment)." U.S.S.G. § 5C1.1, application note 6. There is no sign in the record that the district court considered, gave notice of, or imposed such a departure.

**3.** Wirth also argues that the Court's holding in *Johnson* "attribut[ing] postrevocation penalties to the original conviction" for retroactively purposes, *Johnson*, 529 U.S. at 701, 120 S.Ct. 1795, means that a punishment for a violation of supervised release cannot, when combined with the punishment imposed for the original conviction, exceed the statutory maximum for the underlying offense. Wirth concludes that the two-year sentence that the district court imposed on November 24, 1999, when combined with the 45 month term of imprisonment imposed as part of his original sentence, exceeds the five-year statutory maximum for his original conviction. *See* 18 U.S.C. § 371. We disagree. It is well-settled, as Wirth acknowledges, that punishment for a violation of supervised release is separate from punishment for the underlying conviction and may, when combined with the latter, exceed the statutory maximum for the under-

lying offense. *See, e.g., United States v. Colt*, 126 F.3d 981, 982–83 (7th Cir.1997); *United States v. Robinson*, 62 F.3d 1282, 1285 (10th Cir.1995); *United States v. Wright*, 2 F.3d 175, 179–80 (6th Cir.1993); *United States v. Purvis*, 940 F.2d 1276, 1279 (9th Cir.1991); *United States v. Jamison*, 934 F.2d 371, 373 (D.C.Cir. 1991); *United States v. Williams*, 919 F.2d 266, 272 (5th Cir.1990). The Court in *Johnson* addressed the very different question of whether application of § 3583(h) to cases where the violation of supervised release, though not the original conviction, occurred after the effective date of § 3583(h) raised *ex post facto* concerns. Nothing in the *Johnson* Court's retroactively discussion compels us to depart from the well-settled rule that punishment for a violation of supervised release, when combined with punishment for the original offense, may exceed the statutory maximum for the underlying substantive offense.

Moreover, in this case we think that the October 19, 20, and 22, 1999 hearings were part of a single ongoing sentencing proceeding that resulted in a *modification* of Wirth's supervised release to include 12 months in a drug treatment program, not the *termination* required by § 3583(g). We do not think that the court's affirmative response to Wirth's strategic characterization "I have just been sentenced to a term of 12 months in a drug treatment program," taken in context, is sufficient to demonstrate that the court terminated Wirth's supervised release. The court adjourned the hearing as soon as it realized that it had been operating under a serious misunderstanding and, in subsequent proceedings, clarified that it meant to *modify* the conditions of Wirth's supervised release to include participation in a twelve-month drug treatment program. *Cf. United States v. Bonito,* 57 F.3d 167, 176 (2d Cir.1995) (holding that sentence was not imposed "the moment the judge concluded his initial articulation of the sentence," where the hearing was adjourned when information surfaced that would affect the sentence and ultimately the court imposed a sentence different from the one first articulated); *United States v. Carbone,* 739 F.2d 45, 47 (2d Cir.1984).

At the same time, we decline to affirm a sentence imposed for violating terms of supervised release that (as Wirth vigorously argues) was illegally imposed. But because the illegality of the sentence stems from the district court's failure to *terminate* Wirth's supervised release as required by § 3583(g), we do not reach the question of whether, if Wirth's supervised release had been properly terminated, drug treatment would have been a permissible substitute for imprisonment under U.S.S.G. § 5C1.1.

We have considered all of Wirth's remaining arguments on appeal and find them to be without merit.

## CONCLUSION

For the foregoing reasons, to cure the illegality of the sentence complained of in this appeal, the judgment of the district court is VACATED and the case is REMANDED for resentencing based on Wirth's initial violation of supervised release.