354 F.3d 171
 UNITED STATES of America, Appellee,
v.
Anthony SMITH, a/k/a "Anthony Tyler," a/k/a "Peter Billings," Defendant — Appellant,
 Docket No. 02-1631.
 United States Court of Appeals, Second Circuit.
 Argued: October 9, 2003.
 Decided: December 31, 2003.
 
 Yuanchung Lee, The Legal Aid Society, New York, New York, for the defendant-appellant.
 Thomas G.A. Brown, Assistant United States Attorney (James B. Comey, United States Attorney for the Southern District of New York, on the brief; Christine H. Chung, Assistant United States Attorney, of counsel), New York, New York, for the appellee.
 Before: NEWMAN, SOTOMAYOR, and WESLEY, Circuit Judges.
 SOTOMAYOR, Circuit Judge.
 
 
 1
 Defendant-appellant Anthony Smith ("Smith") appeals from a judgment of the United States District Court for the Southern District of New York (Pauley, J.) sentencing him to 32 months' imprisonment for violating his supervised release pursuant to the pre-1994 version — the version in effect at the time the defendant committed the original offense — of 18 U.S.C. § 3583(g), which governs the penalties for violating the terms of supervised release by possessing a controlled substance. We hold that the date on which the original offense was committed, not the date on which the defendant is sentenced, determines which version of § 3583(g) applies, and affirm the judgment below.
 
 
 Background
 
 
 2
 Smith was convicted in the United States District Court for the District of Columbia (Oberdorfer, J.) on November 1, 1990, for a narcotics violation and for using and carrying a weapon in connection with drug trafficking, in violation of 18 U.S.C. § 924(c). He was sentenced on January 25, 1991, to 130 months' imprisonment on the narcotics charge and to a consecutive five-year term of imprisonment for the weapons violation, as well as to an eight-year term of supervised release. Following the Supreme Court's decision in Bailey v. United States, 516 U.S. 137, 116 S.Ct. 501, 133 L.Ed.2d 472 (1995), which held that a firearm must be actively employed in the commission of a drug crime to satisfy the "use" element of 18 U.S.C. § 924(c), Smith's original sentence was vacated as to the firearm charge and remanded for re-sentencing on the drug charge. Smith was then re-sentenced to 151 months' imprisonment for the narcotics violation, to be followed by an eight-year term of supervised release. Smith's re-sentencing occurred on or about July 21, 1997.[1]
 
 
 3
 On June 20, 2001, Smith began his supervised release. After testing positive for drugs on numerous occasions over the next year, Smith pled guilty in the United States District Court for the Southern District of New York to violating his supervised release. Smith argued at sentencing that he should not be sentenced under the version of § 3583(g) that was in effect at the time he committed his original crime and was first sentenced, but rather under the more recent, more lenient version of § 3583(g). The district court rejected Smith's argument and sentenced Smith to a 32-month prison term as required by the version of § 3583(g) in effect at the time he committed the offense. Smith reasserts the same argument on appeal.
 
 
 Discussion
 
 
 4
 We review the district court's rulings de novo and, for the reasons that follow, we conclude that the district court properly applied the statute that was in effect at the time Smith committed the original offense.
 
 
 5
 At the time Smith committed his original offense and was first sentenced, § 3583(g) required that a person who committed a narcotics-related violation of supervised release be imprisoned to a term equal to one-third of the period of the supervised release. See 18 U.S.C. § 3583(g) (1988). In 1994, however, Congress amended the statute, eliminating this requirement. See 18 U.S.C. § 3583(g) (1994). Although the amended version of § 3583 still requires the court to revoke supervised release and impose a term of imprisonment, see id., it also gives the court some discretion as to length of the imprisonment, see id. § 3583(e)(3), and permits the court to opt not to order imprisonment if it believes that appropriate drug treatment services are available, id. § 3583(d). This statutory amendment was incorporated into the relevant section of the United States Sentencing Guidelines ("Guidelines") in 1995. See U.S. Sentencing Guidelines Manual app. C, amend. 533, at 361-62 (1997). Thus, neither the statutory law nor the Guidelines in effect at the time Smith was re-sentenced in 1997 required imposition of a term of imprisonment equal to one-third of the period of his supervised release.
 
 
 6
 The only question in this appeal is whether Smith's punishment for violating his supervised release should have been imposed under the version of the statute and Guidelines in effect at the time he committed the original offense and was first sentenced, or under the more lenient versions in effect when he was re-sentenced in 1997. Smith's argument that the more recent versions apply rests on similar statutory and Sentencing Guidelines provisions, which both provide that a judge is to apply the version of the Guidelines that are "in effect on the date the defendant is sentenced." See 18 U.S.C. § 3553(a)(4)(A)(ii); see also U.S.S.G. § 1B1.11(a). Smith argues that the version of the Guidelines that was in effect when he was re-sentenced in 1997 reflected the more lenient changes to § 3583(g), and thus both the more recent versions of the Guidelines and § 3583(g) should govern his punishment for violating his supervised release.
 
 
 7
 We reject Smith's argument on several grounds. First, relevant Supreme Court and Second Circuit case law supports the Government's contention that it is the law at the time of the offense, including those provisions relating to supervised release, that governs. Second, the federal "saving statute" preserves the original penalties in effect when Smith committed the offense, including those relating to supervised release. Third, Smith's claim that the court must apply the version of the Guidelines in effect at the time of his re-sentencing fails because the pre-1994 version of § 3583(g) was controlling to the extent that it was in conflict with the post-1995 Guidelines in effect at the time of Smith's re-sentencing.
 
 
 8
 First, Smith's arguments in favor of the application of the amended statute and Guidelines are contrary to existing case law. In Johnson v. United States, 529 U.S. 694, 120 S.Ct. 1795, 146 L.Ed.2d 727 (2000), the Supreme Court established that the pre-1994 version of § 3583 would govern even postamendment sentencings for violations of supervised release committed by defendants whose crimes occurred while the original law was still in effect. In Johnson, the defendant claimed that the district court's imposition of an additional term of supervised release for violating his original supervised release, although explicitly permitted by the amended version of § 3583, violated the Ex Post Facto Clause because he had been sentenced originally under the pre-1994 version of the law. In rejecting the lower court's theory that the supervised release violation constituted an independent offense unrelated to the original conviction, and therefore that sentencing the defendant under the post-1994 version of § 3853 did not implicate the Ex Post Facto Clause, the Court held that penalties for supervised release violations are part of the punishment for the original offense. Id. at 700-01, 120 S.Ct. 1795. The Court further held that, in the absence of express congressional intent to apply a criminal statute retroactively, the date of the "initial offense" is determinative of the applicable law at sentencing. Id. at 702, 120 S.Ct. 1795. It is true, as Smith points out, that the amended provision for supervised release, discussed in Johnson, would have burdened the defendant, whereas the amended version he seeks to apply here would benefit him. The burdening effect in Johnson would have encountered ex post facto objection if the amended version had been applicable. Id. at 701, 120 S.Ct. 1795. However, the message of Johnson, unaffected by the burdening effect that the amended version would have had upon those sentenced after the amendment for pre-amendment offenses, is that supervised release sanctions are part of the punishment for the original offense, and that the sanctions of the original offense remain applicable, despite subsequent amendment.
 
 
 9
 Following Johnson, we refused to apply retroactively the amended version of § 3583(g) in United States v. Wirth, 250 F.3d 165 (2d Cir.2001). In Wirth, the defendant's underlying offenses were committed in 1990 and 1991, but his supervised release violations did not occur until after the 1994 amendments became effective. Relying on Johnson and applying the principle that the law relating to supervised release in effect at the time of the initial offense governs a defendant's sentencing, we held that Wirth's supervised release violation was governed by the pre-1994 version of § 3583(g). Id. at 169-70.
 
 
 10
 Smith contends that this case is distinguishable from Johnson and Wirth because neither case presented a situation where the defendant was re-sentenced for his original offense after the statute was amended. This factual distinction is immaterial, however, as Johnson and Wirth clearly state that the date on which the original offense is committed, not the date on which the defendant is sentenced for that offense, determines which version of a statute applies. Thus, the mere fact that Smith's re-sentencing date occurred after the amendments to § 3583(g) and the Guidelines took effect does not distinguish this case from the rule established in Johnson and followed in Wirth.
 
 
 11
 Second, Smith's argument that the post-1994 version of § 3853(g) should apply is foreclosed by the federal "saving statute," which mandates the continuing applicability of the pre-1994 law governing supervised release violations to defendants whose offenses occurred before § 3853 was amended. See 1 U.S.C. § 109. Section 109, which was designed to ensure that a convicted criminal defendant does not fortuitously benefit from more lenient laws that may be passed after he or she has been convicted, see Warden, Lewisburg Penitentiary v. Marrero, 417 U.S. 653, 94 S.Ct. 2532, 41 L.Ed.2d 383 (1974); United States v. Ross, 464 F.2d 376, 378, (2d Cir.1972), provides:
 
 
 12
 The repeal of any statute shall not have the effect to release or extinguish any penalty, forfeiture, or liability incurred under such statute, unless the repealing Act shall so expressly provide, and such statute shall be treated as still remaining in force for the purpose of sustaining any proper action or prosecution for the enforcement of such penalty....
 
 
 13
 Smith contends that the federal "saving statute" is inapposite in this case because it only applies when a defendant has "incurred" a penalty under the statute that § 109 would save. Smith argues that there was no pre-1994 penalty for § 109 to preserve in this case because he did not "incur" his supervised release penalty until he violated the terms of his supervised release, well after § 3583(g) had been amended.
 
 
 14
 Smith's interpretation of § 109 has been rejected by this court. See Ross, 464 F.2d at 379 (adopting the more "reasonable" interpretation that the statute saves the penalties "incurred" by commission of the initial offense). Additionally, we held in Ross that sentencing is an integral part of the "prosecution" of the accused, as that term is used in § 109, and therefore that § 109 saves sentencing provisions in addition to substantive laws. See id. at 379-80 (citing United States v. Kirby, 176 F.2d 101, 104 (2d Cir.1949)); see also United States v. Pettus, 303 F.3d 480, 482 (2d Cir.2002) (holding "supervised release is part of the whole matrix of punishment arising out of the original offense"). Accordingly, § 109 saves the penalties from the date of Smith's initial offense.
 
 
 15
 Third, having already determined that the version of § 3583(g) that was in effect at the time of the offense governs Smith's punishment for violating his supervised release, it is easy to dispel Smith's argument that the Guidelines themselves required the district court to apply the version in effect at the time of sentencing. Even if we accept Smith's argument that he should benefit from the more recent version of the Guidelines that reflects the changes to § 3583(g), at best the sentencing judge then would be confronted with a conflict between the governing statute — the older version of § 3583(g) — and the Guidelines. In such cases the statute controls.
 
 
 16
 The Guidelines, promulgated by the United States Sentencing Commission under an express delegation of rule-making authority from Congress, see 28 U.S.C. § 994(a)(1), "are the equivalent of legislative rules adopted by federal agencies." Stinson v. United States, 508 U.S. 36, 45, 113 S.Ct. 1913, 123 L.Ed.2d 598 (1993). They therefore have the effect of law, but can be amended or revoked by Congress at any time. See Mistretta v. United States, 488 U.S. 361, 393-94, 109 S.Ct. 647, 102 L.Ed.2d 714 (1989). Thus, when an act of Congress conflicts with a Guideline, the statute controls. See Stinson, 508 U.S. at 38, 47, 113 S.Ct. 1913; see also U.S.S.G. § 5G1.1(b) (2002) ("Where a statutorily required minimum sentence is greater than the maximum of the applicable guideline range, the statutorily required minimum sentence shall be the guideline sentence."). The version of the Guidelines in effect at the time of Smith's re-sentencing, therefore, must yield to the conflicting statutory requirement that Smith serve a term of imprisonment for his supervised release violation equal to one-third of the term of supervised release. The district court was accordingly correct in imposing a sentence of 32 months' imprisonment.
 
 
 Conclusion
 
 
 17
 We conclude that the date on which the original offense was committed, not the date on which the defendant is sentenced, determines which version of 18 U.S.C. § 3583(g) applies and affirm the judgment of the district court.
 
 
 
 Notes:
 
 
 [1]
 The record does not indicate why the precise date of Smith's re-sentencing is unknown. It is undisputed, however, that July 21, 1997 is the approximate, if not the exact, re-sentencing date