**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

**No. 13-4683**

UNITED STATES OF AMERICA,

        Plaintiff - Appellee,

    v.

GEORGE A. WARD,

        Defendant - Appellant.

Appeal from the United States District Court for the Eastern
District of Virginia, at Newport News. Henry Coke Morgan, Jr.,
Senior District Judge. (4:94-cr-00070-HCM-1)

Argued: September 19, 2014        Decided: November 3, 2014

Before WILKINSON, DUNCAN, and KEENAN, Circuit Judges.

Affirmed by published opinion. Judge Keenan wrote the opinion,
in which Judge Wilkinson and Judge Duncan joined.

**ARGUED:** Frances H. Pratt, OFFICE OF THE FEDERAL PUBLIC DEFENDER,
Alexandria, Virginia, for Appellant. Robert Edward Bradenham,
II, OFFICE OF THE UNITED STATES ATTORNEY, Newport News,
Virginia, for Appellee. **ON BRIEF:** Michael S. Nachmanoff,
Federal Public Defender, Alexandria, Virginia, Richard J.
Colgan, Assistant Federal Public Defender, OFFICE OF THE FEDERAL
PUBLIC DEFENDER, Norfolk, Virginia, for Appellant. Dana J.
Boente, Acting United States Attorney, OFFICE OF THE UNITED
STATES ATTORNEY, Alexandria, Virginia; Katharina J. Rienks,

Third Year Law Student, WILLIAM & MARY LAW SCHOOL, Williamsburg, Virginia, for Appellee.

———————

BARBARA MILANO KEENAN, Circuit Judge:

George A. Ward appeals from the district court's judgment sentencing him to a term of 20 months' imprisonment for violating the conditions of his supervised release. This sentence was the mandatory minimum term required by a former version of the supervised release statute, 18 U.S.C. § 3583(g), which Congress amended in 1994 to eliminate the statute's mandatory minimum sentencing provision. The amended statute was enacted after Ward committed the underlying offenses for which he was originally convicted, but before he engaged in the conduct that led to the revocation of his supervised release.

On appeal, Ward argues that the district court erred in failing to apply the amended version of Section 3583(g). Ward also argues that his mandatory minimum sentence violates the Sixth Amendment, as construed in Alleyne v. United States, 133 S. Ct. 2151 (2013), because the sentence was imposed based on factual findings made by a judge by a preponderance of the evidence, rather than by a jury under the standard of beyond a reasonable doubt.

Upon our review, we conclude that the district court correctly applied the former version of Section 3583(g), because that version of the statute was in effect when Ward committed the underlying crimes. We further conclude that Alleyne, which affords certain constitutional protections when a mandatory

3

minimum sentence is at issue in a criminal trial, does not apply in the context of supervised release revocation proceedings. Accordingly, we affirm the district court's judgment.

## I.

In December 1994, Ward pleaded guilty to several felony charges, including three counts of being a felon in possession of a firearm, in violation of 18 U.S.C. §§ 922(g)(1) and 924, two counts of distribution of crack cocaine, in violation of 21 U.S.C. § 841, and one count of use of a firearm in furtherance of a drug trafficking crime, in violation of 18 U.S.C. § 924(c). The district court sentenced Ward to a prison term of 260 months, followed by a five-year period of supervised release. Among other things, the conditions of Ward's supervised release prohibited him from illegally possessing a controlled substance.

Ward's prison term ultimately was reduced by the district court to 200 months,[1] but the court expressly left intact the original duration and conditions of Ward's supervised release. When Ward was released from prison in October 2010, he began his five-year term of supervised release.

---

[1] The reduction in Ward's prison sentence occurred as a result of this Court's unpublished order vacating Ward's conviction for violating 18 U.S.C. § 924(c), as well as the district court's application of 18 U.S.C. § 3582 concerning retroactive amendments to the United States Sentencing Guidelines for crack cocaine offenses.

4

In April 2013, the government filed a petition in the district court seeking to revoke Ward's supervised release. The government alleged that Ward violated his conditions of release by testing positive for cocaine on four occasions, and positive for marijuana on two occasions.[2] The government later supplemented its revocation petition, alleging three additional instances in which Ward had tested positive for cocaine.

At a hearing on the government's petition, Ward admitted that he had possessed cocaine and marijuana on numerous occasions during his supervised release term. At the conclusion of the evidence, the district court revoked Ward's supervised release, finding that Ward had violated the conditions of his release.

In determining Ward's sentence, the district court first addressed which version of 18 U.S.C. § 3583(g) applied. Under the version of Section 3583(g) in effect when Ward committed the underlying crimes, Ward was subject to a mandatory minimum sentence of one-third of his supervised release term, because his violation was based on his illegal possession of controlled substances. See 18 U.S.C. § 3583(g) (1993 ed.) ("If the defendant is found by the court to be in the possession of a

---

[2] The government also alleged, and Ward admitted during the revocation hearing, that he violated the conditions of his supervised release by submitting untimely reports to his probation officer.

5

controlled substance, the court shall terminate the term of supervised release and require the defendant to serve in prison not less than one-third of the term of supervised release."). Thus, in this case, application of former Section 3583(g) required a sentence of at least 20 months' imprisonment based on the original five-year term of supervised release.

Congress amended former Section 3583(g) in September 1994, eliminating the mandatory minimum sentencing provision. See Violent Crime Control and Law Enforcement Act of 1994, Pub. L. 103-322, § 110505(3), 108 Stat. 1796. Ward argued that he should be sentenced under the amended statute, which was in effect both when the court imposed Ward's original sentence and when he violated the supervised release conditions.

The district court held that it was bound by the former version of the statute. The court sentenced Ward to the mandatory minimum prison term of 20 months, stating, "I'm not imposing 20 months based on the fact that I have the discretion to do that for this violation, I'm imposing it because the [c]ourt believes it's mandatory. And if it wasn't mandatory I wouldn't impose a sentence that severe." Ward filed a timely notice of appeal.

We first address Ward's argument that the district court erred in applying the former version of Section 3583(g) when imposing the sentence for his supervised release violation. Ward contends that the former version of the statute was not applicable because the statute was amended before he originally was sentenced and before he committed the acts in violation of his conditions of release. We review de novo this issue of law. See United States v. Fareed, 296 F.3d 243, 245 (4th Cir. 2002).

A.

We conclude that under the Supreme Court's decision in Johnson v. United States, 529 U.S. 694 (2000), the district court properly applied former Section 3583(g) in determining Ward's revocation sentence. In Johnson, the Court addressed whether a provision of former Section 3583 that had not been enacted at the time of the petitioner's underlying offense was applicable in his supervised release revocation proceeding, when his conduct in violation of the conditions of release occurred after the statute was amended.[3] 529 U.S. at 697-702. The Court

---

[3] The decision in Johnson concerned subsection (h) of 18 U.S.C. § 3583, which was enacted at the same time subsection (g) was amended in 1994. Violent Crime Control and Law Enforcement Act of 1994, Pub. L. 103-322, § 110505(3), 108 Stat. 1796. Section 3583(h) expressly authorizes the district court to impose an additional term of supervised release as part of the sentence in a revocation proceeding. Johnson, 529 U.S. at 698.

held that the defendant was subject to the sentencing provisions of the pre-amendment statute in effect when the initial offense was committed. Id. at 701-02.

In reaching its conclusion in Johnson, the Court expressly rejected the argument that revocation and reimprisonment should be characterized as punishment for a violation of the conditions of supervised release. Id. at 700-01. Instead, the Court held that "postconviction penalties relate to the original offense." Id. at 701.

In light of this conclusion, the Court considered whether Congress intended that the amended version of Section 3583 apply retroactively. The Court analyzed this question under the well-established presumption that legislation will not be given retroactive effect unless Congress clearly manifested such an intent. Id. The Court noted the absence of any clear congressional intent, and accordingly held that amended Section 3583(h) "applies only to cases in which that initial offense occurred after the effective date of the amendment." Id. at 702.

In the present case, Ward committed his underlying offenses between December 1993 and June 1994, before Congress amended former Section 3583 in September 1994. Thus, absent clear congressional intent to the contrary, the former version of

Section 3583(g) was controlling in Ward's supervised release revocation proceeding.  See id.

There is no evidence that Congress intended the amended version of Section 3583(g) to have retroactive application. Fareed, 296 F.3d at 245 n.2 ("Congress provided no indication that it intended the 1994 amendments [to former Section 3583(g)] to apply retroactively.").[4]  And, notably, Ward does not provide any authority supporting a different conclusion.

The fact that Ward was not sentenced for his crimes until after the statute was amended is immaterial because the "relevant conduct" in determining whether former Section 3583(g) applies is the "initial offense."  Johnson, 529 U.S. at 702. The Second Circuit emphasized this point in a case involving the same issue before us regarding mandatory minimum revocation sentences required by former Section 3583(g).  In United States v. Smith, 354 F.3d 171, 174 (2d Cir. 2003), the Second Circuit explained that it was irrelevant that the defendant's

---

[4]  The issue in Fareed involved the district court's application of former Section 3583 as a basis for imposing an additional period of supervised release as part of a sentence for violating the conditions of the defendant's initial period of supervised release.  296 F.3d at 245.  We observed that the district court's authority to impose an additional term of supervised release was clear under Section 3583(g) as amended in 1994.  Id. at 245 n.2.  However, we held that the former version of the statute, which was in effect when the defendants committed the underlying offenses, applied because there was no indication that Congress intended that the amended statute apply retroactively.  Id. (citing Johnson, 529 U.S. at 701-02).

9

resentencing occurred after the enactment of the amendment because, under Johnson, "the date on which the original offense is committed, not the date on which the defendant is sentenced for that offense, determines which version of a statute applies."[5] We agree with the Second Circuit's reasoning in Smith, which expressly applied the Supreme Court's directive in Johnson that the "relevant conduct is the initial offense" in assessing which version of Section 3583 governs at a supervised release revocation proceeding. 529 U.S. at 702; see also United States v. Perry, 743 F.3d 238, 240 (7th Cir. 2014) (holding that the statute in effect on the date the defendant commits the underlying offense governs the sentence available in a supervised release revocation hearing).

## B.

We next conclude that the federal Savings Statute, 1 U.S.C. § 109, also required that the district court apply former

---

[5] Ward further attempts to distinguish Johnson on the basis that application of the amended Section 3583(h) in Johnson would have burdened that defendant, thus raising potential issues concerning the Constitution's Ex Post Facto Clause, whereas the amended version of Section 3583(g) at issue here would benefit Ward. However, as noted by the Second Circuit in Smith, the Supreme Court acknowledged but did not reach the ex post facto issue in Johnson. See Smith, 354 F.3d at 174. Instead, the Court decided the issue based on the lack of congressional intent concerning retroactivity and the principle that supervised release sanctions are part of the punishment for the original offense. Johnson, 529 U.S. at 700-03.

10

Section 3583(g).  The Savings Statute provides, in relevant part:

> The repeal of any statute shall not have the effect to release or extinguish any penalty, forfeiture, or liability incurred under such statute, unless the repealing Act shall so expressly provide, and such statute shall be treated as still remaining in force for the purpose of sustaining any proper action or prosecution for the enforcement of such penalty, forfeiture, or liability.

1 U.S.C. § 109 (emphasis added).  Under the Savings Statute, absent a clear indication from Congress of retroactive application, a defendant is not entitled to "application of ameliorative criminal sentencing laws repealing harsher ones in force at the time of the commission of an offense."  Warden, Lewisburg Penitentiary v. Marrero, 417 U.S. 653, 661 (1974).  Although the language of the Savings Statute refers to the "repeal" of statutes, the Savings Statute also applies in considering the application of statutory amendments.  United States v. Bullard, 645 F.3d 237, 248 (4th Cir. 2011).

Ward maintains, however, that the Savings Statute did not apply in his case, because he had not "incurred" any penalty before the mandatory minimum provision of former Section 3583(g) was eliminated.  We disagree.

Under the Savings Statute, a penalty is "incurred" under a former statute "when an offender becomes subject to [the penalty], i.e., commits the underlying conduct that makes the

11

offender liable." Dorsey v. United States, 132 S. Ct. 2321, 2331 (2012). As discussed above, in the context of a supervised release revocation proceeding, the "relevant conduct" is the initial offense, not the conduct in violation of the conditions of supervised release. Johnson, 529 U.S. at 701-02; see also Smith, 354 F.3d at 175 (citing United States v. Ross, 464 F.2d 376, 379 (2d Cir. 1972)). Thus, Ward "incurred" all penalties relating to his offenses, including the penalties imposed because he later violated the conditions of his supervised release, at the time he committed his original offenses between December 1993 and June 1994 when former Section 3583(g) was in effect. Accordingly, we conclude that, in the present case, the Savings Statute preserved the mandatory minimum punishment provision of former Section 3583(g). See Smith, 354 F.3d at 175.

Our conclusion is not altered by the Supreme Court's holding in Dorsey. There, the Court held that the Savings Statute did not bar application of reduced penalties for defendants who were convicted of crack cocaine offenses before the enactment of the Fair Sentencing Act (FSA), but who were not sentenced until after its enactment.[6] 132 S. Ct. at 2326. The

---

[6] The FSA increased the amount of crack cocaine required to impose certain mandatory minimum sentences, thereby reducing the crack-to-powder cocaine disparity from 100-to-1 to 18-to-1. (Continued)

12

Court in Dorsey applied the principle, consistent with the Savings Statute itself, that a new criminal law providing more lenient penalties may be applied retroactively if it is clear that Congress intended this result. 132 S. Ct. at 2331-32. The Court explained that the ameliorative provision of the FSA could be applied in sentencing such defendants, given "congressional intent as revealed in the Fair Sentencing Act's language, structure, and basic objectives."[7] Id. at 2326.

Unlike the clear intent of Congress expressed in the FSA, the amendments to Section 3583 do not evidence any clear congressional intent providing for retroactive application of the amended statute. See Johnson, 529 U.S. at 701-02; Fareed, 296 F.3d at 245 n.2. Accordingly, the district court did not err in applying the former version of Section 3583(g) in

---

Dorsey, 132 S. Ct. at 2326, 2329. The FSA thus resulted in lesser sentences for many defendants convicted of crack cocaine offenses than under the law before the FSA's enactment.

[7] The Court examined six factors in Dorsey, several of which were particular to the FSA, and concluded that these factors taken together showed clear congressional intent that the FSA apply to defendants who committed an offense before, but were sentenced after, the FSA's enactment. 132 S. Ct. at 2331-35. Included among these factors was language in the FSA that gave the United States Sentencing Commission "[e]mergency [a]uthority" quickly to promulgate amendments to the sentencing guidelines that would "achieve consistency" with the more lenient penalties for crack cocaine offenses under the FSA. Id. at 2332-33 (citations and internal quotation marks omitted).

determining Ward's sentence at the supervised release revocation proceeding.

### III.

Ward next argues that the district court's application of the mandatory minimum provision in former Section 3583(g) violated his Sixth Amendment rights, because the factual findings required to impose that sentence were not made by a jury applying the standard of beyond a reasonable doubt. We review de novo this question of law. See Fareed, 296 F.3d at 245.

At the outset, we observe that the Supreme Court in Johnson stated that a violation of the conditions of supervised release "need only be found by a judge under a preponderance of the evidence standard, not by a jury beyond a reasonable doubt." 529 U.S. at 700 (citing 18 U.S.C. § 3583(e)(3)). However, the decision in Johnson was issued about two months before the Supreme Court released its seminal decision in Apprendi v. New Jersey, in which the Court held that any fact in a criminal trial that increases the statutory maximum penalty must be submitted to a jury and proved beyond a reasonable doubt. 530 U.S. 466, 476 (2000). The decision in Johnson also was issued twelve years before the decision in Alleyne, in which the Court extended the Apprendi holding to require a jury determination

14

under the standard of beyond a reasonable doubt for any factual finding in a criminal trial that requires imposition of a statutory mandatory minimum sentence. 133 S. Ct. at 2162-63.

We therefore turn to consider whether the holding in Alleyne applies in the context of a supervised release revocation hearing. This issue presents a question of first impression in the federal courts of appeal.

One of the most fundamental constitutional protections afforded to a defendant in a criminal trial is the right to a trial by jury, in which the government bears the burden of proving its case beyond a reasonable doubt. See Sullivan v. Louisiana, 508 U.S. 275, 277-78 (1993) (characterizing the right to a trial by jury under the standard of beyond a reasonable doubt as central to the "American scheme of justice" and noting the origin of the right in the Fifth and Sixth Amendments). This fundamental protection is the basis of the Supreme Court's holdings in Apprendi and Alleyne. In those cases, the Court recognized the core principle that, in a criminal prosecution, each "element of a crime" must be submitted to a jury and proved beyond a reasonable doubt. Alleyne, 133 S. Ct. at 2156; Apprendi, 530 U.S. at 490.

In Apprendi, the Court applied that principle in holding that any fact increasing the statutory maximum penalty to which a defendant is exposed is an element of the offense and, thus,

15

must be submitted to a jury and proved beyond a reasonable doubt. 530 U.S. at 477, 490. The decision in Alleyne relied almost exclusively on Apprendi, and extended the Apprendi holding to require that a jury determine beyond a reasonable doubt any fact requiring imposition of a mandatory minimum sentence. Alleyne, 133 S. Ct. at 2158 (holding that "Apprendi's definition of 'elements' necessarily includes not only facts that increase the ceiling, but also those that increase the floor").

In considering whether the Alleyne holding applies to a mandatory minimum sentence imposed in a supervised release revocation proceeding, we observe that in contrast to the criminal trials at issue in Alleyne and Apprendi, supervised release revocation proceedings are not considered part of a criminal prosecution. See, e.g., United States v. Phillips, 640 F.3d 154, 157 (6th Cir. 2011); United States v. House, 501 F.3d 928, 931 (8th Cir. 2007); United States v. Carlton, 442 F.3d 802, 807-08 (2d Cir. 2006); United States v. Tippens, 39 F.3d 88, 89 (5th Cir. 1994); see also Morrissey v. Brewer, 408 U.S. 471, 480 (1972) (noting that a parole revocation hearing is not part of a criminal prosecution); Gagnon v. Scarpelli, 411 U.S. 778, 781-82 (1973) (discussing Morrissey and holding that probation revocation is not a stage of a criminal prosecution); United States v. Ferguson, 752 F.3d 613, 616 (4th Cir. 2014)

16

(applying Morrissey in the context of supervised release revocation). Accordingly, the present question arises in a critically different context than the criminal prosecutions at issue in Apprendi and Alleyne.

The distinction between a criminal prosecution and a supervised release revocation proceeding extends beyond mere labels. In contrast to a criminal trial, a supervised release revocation hearing is a less formal proceeding in which the violative conduct need not be criminal in nature. See Johnson, 529 U.S. at 700; Ferguson, 752 F.3d at 616 (stating that "[r]evocation hearings are less formal than trials of guilt"); United States v. Stephenson, 928 F.2d 728, 732 (6th Cir. 1991) (observing that "revocation hearings are more flexible than a criminal trial"); see also Black v. Romano, 471 U.S. 606, 613 (1985) (discussing "flexible, informal nature" of revocation hearings for probation violations).

Courts consistently have held that the constitutional protections afforded in a criminal trial are not co-extensive with the rights applicable in post-conviction proceedings such as supervised release revocation hearings. For example, courts have held that the Sixth Amendment's Confrontation Clause, as construed in Crawford v. Washington, 541 U.S. 36 (2004), does not apply in supervised release revocation proceedings. See, e.g., United States v. Ray, 530 F.3d 666, 668 (8th Cir. 2008);

17

United States v. Kelley, 446 F.3d 688, 691 (7th Cir. 2006). Likewise, courts have held that the Sixth Amendment right to a speedy trial does not apply in the context of a supervised release revocation hearing.[8] See, e.g., House, 501 F.3d at 931; Tippens, 39 F.3d at 89.

These holdings are grounded in the Supreme Court's decision in Morrissey, in which the Court held that "the full panoply of rights due a defendant in [a criminal prosecution] does not apply to parole revocations" because such revocation proceedings are not part of a criminal prosecution.[9]  408 U.S. at 480. Instead, the Court identified a limited set of constitutional protections that apply in a revocation proceeding.[10]  Id. at 489.

---

[8] Although there is no constitutional basis for these rights in a revocation proceeding, we note that these rights are addressed to some degree by Rule 32.1 of the Federal Rules of Criminal Procedure.  See Fed. R. Crim. P. 32.1(b)(2) (specifying that the revocation hearing should be held "within a reasonable time," and allowing a limited right to question adverse witnesses "unless the court determines that the interest of justice does not require the witness to appear").

[9] See also United States v. Woodrup, 86 F.3d 359, 361–62 (4th Cir. 1996) (citing Morrissey and stating that "the full panoply of constitutional protections afforded a criminal defendant is not required for the revocation of supervised release"); Ray, 530 F.3d at 668 (same); Kelley, 446 F.3d at 691 (same); Carlton, 442 F.3d at 807 (same).

[10] The constitutional protections identified by the Court in Morrissey include: "(a) written notice of the claimed violations of parole; (b) disclosure to the parolee of evidence against him; (c) opportunity to be heard in person and to present witnesses and documentary evidence; (d) the right to confront (Continued)

18

This limited set of constitutional protections identified in Morrissey does not include the right to have a jury determine relevant facts beyond a reasonable doubt. Cf. Minnesota v. Murphy, 465 U.S. 420, 435 n.7 (1984) (stating that "there is no right to a jury trial before probation may be revoked").

In addition to the distinction the Court drew in Morrissey between the nature of a criminal prosecution and a revocation hearing, the Court also recognized that "[r]evocation deprives an individual, not of the absolute liberty to which every citizen is entitled, but only of the conditional liberty properly dependent on observance" of the conditions imposed upon the individual's release from prison. 408 U.S. at 480 (emphasis added). Like parolees, individuals on supervised release also enjoy only "conditional liberty" because they already have been convicted of the underlying criminal offense. See Carlton, 442 F.3d at 810; see also United States v. McIntosh, 630 F.3d 699, 703 (7th Cir. 2011); United States v. Cunningham, 607 F.3d 1264, 1268 (11th Cir. 2010); United States v. Cordova, 461 F.3d 1184, 1187 (10th Cir. 2006). In contrast, the criminal defendants in

---

and cross-examine adverse witnesses (unless the hearing officer specifically finds good cause for not allowing confrontation); (e) a 'neutral and detached' hearing body such as a traditional parole board, members of which need not be judicial officers or lawyers; and (f) a written statement by the factfinders as to the evidence relied on and reasons for revoking parole." 408 U.S. at 489.

19

*Apprendi* and *Alleyne* had not been made subject to such "conditional liberty."

We conclude that the conditional liberty to which those under supervised release are subject entails the surrender of certain constitutional rights, including any right to have the alleged supervised release violation proved to a jury beyond a reasonable doubt. See *Carlton*, 442 F.3d at 809 (holding that "a sentence of supervised release by its terms involves a surrender of certain constitutional rights and this includes surrender of the due process rights articulated in *Apprendi* and its progeny"); see also *McIntosh*, 630 F.3d at 703 (an individual on supervised release enjoys only "conditional liberty" and has no right to a jury trial in a supervised release revocation proceeding); *Cunningham*, 607 F.3d at 1268 (same). We are unaware of any court that has reached a different conclusion. On the contrary, our sister circuits uniformly have rejected arguments seeking to extend the holding in *Apprendi* to require trial by jury under the standard of beyond a reasonable doubt in a supervised release revocation hearing. See *McIntosh*, 630 F.3d at 702-03; *Cunningham*, 607 F.3d at 1267-68; *United States v. Dees*, 467 F.3d 847, 854-55 (3d Cir. 2006); *Cordova*, 461 F.3d at 1186-88; *United States v. Huerta-Pimental*, 445 F.3d 1220, 1222-25 (9th Cir. 2006); *Carlton*, 442 F.3d at 807-10; *United States*

20

v. Hinson, 429 F.3d 114, 118-19 (5th Cir. 2005); United States v. Work, 409 F.3d 484, 489-92 (1st Cir. 2005).

We acknowledge that these cases were decided before Alleyne and do not involve the imposition of a mandatory minimum sentence.[11] Nevertheless, because the Alleyne decision is based almost entirely on the reasoning and holding in Apprendi, we conclude that our decision here properly is informed by the holdings of our sister circuits rejecting application of Apprendi in the supervised release revocation context.

Our sister circuits' decisions also are consistent with Morrissey and Johnson by holding that a defendant in a post-conviction revocation proceeding does not have a constitutional right to trial by jury under the standard of beyond a reasonable doubt. The core principle of Alleyne is that such a constitutional right exists as a fundamental protection in a

---

[11] As Ward observes, our sister circuits additionally noted in a few of these cases that a judicial finding that the defendant violated the conditions of supervised release does not require application of Apprendi and its progeny because a judge generally retains discretion under 18 U.S.C. § 3583(e)(3) to determine the appropriate sentence. Although there was no such judicial discretion in the present case, we nevertheless rely on those decisions of our sister circuits because their reasoning primarily involved the limited "panoply of rights" applicable in supervised release revocation proceedings. See Dees, 467 F.3d at 854-55; Cordova, 461 F.3d at 1186-88; Carlton, 442 F.3d at 807-10; Hinson, 429 F.3d at 118-19; Work, 409 F.3d at 489-92; see also McIntosh, 630 F.3d at 702-03 (not mentioning district court's general discretion under Section 3583(e)); Cunningham, 607 F.3d at 1267-68 (same).

21

criminal trial, 133 S. Ct. at 2156, and the Court's holding providing for a jury determination of facts required for imposition of a mandatory minimum sentence was a straightforward application of that principle. Because a supervised release revocation proceeding is not a criminal prosecution, we conclude that <u>Alleyne</u>'s protections are inapplicable in the present context.[12]

IV.

In sum, we hold that the district court did not err in applying the former version of Section 3583(g) in Ward's supervised release revocation proceeding. We further hold that Ward's Sixth Amendment rights were not violated when the court, rather than a jury, determined that Ward possessed a controlled substance in violation of his supervised release conditions. Accordingly, we affirm the district court's judgment.

<u>AFFIRMED</u>

---

[12] We find no merit in Ward's contention that we should construe former Section 3583(g) as merely advisory for remedial purposes.